PENINSULAR CHEMICAL CO. v. LEVINSON et al.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1917.)

No. 3043.

1. TRADE-MARKS AND TRADE-NAMES ⬤⟿61—REGISTRATION—SCOPE OF TRADE-MARK.
    Where the certificate of registration of a trade-mark recited that it was used for chemicals, medicines, and pharmaceutical preparations, the trade-mark did not include cigars, for they cannot be said to be of the same descriptive properties as the specified articles, even though they are usually sold at drug stores.

2. TRADE-MARKS AND TRADE-NAMES ⬤⟿97—UNFAIR COMPETITION—WHAT CONSTITUTES.
    Plaintiff, which sold and distributed drugs and other druggist supplies, adopted as its trade-name and trade-mark the arbitrary word "Penslar." The drug stores which purchased such articles were known as "Penslar Drug Stores," and plaintiff intended ultimately to sell cigars. Defendants sold cigars marked "Penslar" to the Penslar drug stores, patronizing plaintiff. Defendants' general representations were that plaintiff had determined to put out cigars, and that defendants were engaged on behalf of plaintiff in introducing them to the Penslar Drug Stores, and that if the dealer would not buy them it would be necessary to offer them to some competitor who did not have Penslar goods. Held, there being a presumption that the cigars were inferior or they would not be sold by misrepresentations, and that presumption being upheld by evidence, defendants should be enjoined from using the name "Penslar" in connection with their cigars; their purpose being a fraud, and it working injury to the good will of plaintiff's business and the reputation of its output,

─────────────────────────
⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by inducing customers to think the cigars, which were inferior, were offered by plaintiff.

3. TRADE-MARKS AND TRADE-NAMES ☞93(1)—UNFAIR COMPETITION—LIABILITY FOR MISREPRESENTATIONS.

In such case, where the manufacturer of the cigars contended that he did not authorize his codefendant, the salesman, to make misrepresentations as to their origin, it must be inferred that he authorized such misrepresentations, as he copied the name used by plaintiff in disposing of its product, and also dressed his cigars in such a way as to lead purchasers to believe they were manufactured by plaintiff.

4. TRADE-MARKS AND TRADE-NAMES ☞85(1)—RELIEF—CLEAN HANDS.

Where plaintiff, a corporation engaged in the distribution of drugs and pharmaceutical supplies, purchased them from a Detroit company, but maintained in Canada its own place of manufacture for goods sold there, and plaintiff's label, between their corporate name and American address, contained the word "Distributors," but elsewhere stated that plaintiff's Canadian laboratory was in Walkerville, Ontario, plaintiff cannot be denied protection of a court of equity against one seeking to dispose of his goods as those of plaintiff, on the ground that, because of misrepresentations on the label, plaintiff did not come into court with clean hands; the label merely being equivalent to a statement that some of the goods sold in Canada were made there.

5. TRADE-MARKS AND TRADE-NAMES ☞97—RIGHT TO INJUNCTION—ISSUANCE.

Where the actual damages suffered by reason of unfair competition are difficult to establish with precision, or perhaps impossible of ascertainment, and the prevention of threatened future injury is the substantial thing, an injunction will be awarded, even though there is no sufficient basis for an accounting.

6. EQUITY ☞65(1)—CLEAN HANDS.

A defendant, whose business enterprise is based upon express and deliberate fraud, will not find a court of equity as strenuous to preserve all the rights which he might have had, if his conduct and motives had been honest.

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Bill by the Peninsular Chemical Company against Samuel Levinson and another. From a decree dismissing the bill, plaintiff appeals. Reversed and remanded.

The Nelson-Baker Company is engaged, at Detroit, in the business of manufacturing drugs and medicines. Observing that other manufacturers of similar goods were putting out a "line" of drug store supplies and sundries and supplying many or most of the needs of a chain of drug stores throughout the country, which stores were designated by the trade-name adopted for such line of supplies, the Nelson-Baker Company determined to adopt that method of business. Accordingly, it organized a corporation under the laws of Michigan, with stockholders and officers mainly identical with those of the Nelson-Baker Company. This corporation was named "Peninsular Chemical Company," and is the plaintiff herein. Its goods, sold in this country, it bought mainly, or took over from the Nelson-Baker Company but bought some articles from other manufacturers. It adopted, as its general trade-name and trade-mark, for the goods which it handled, "Penslar," and this arbitrary name was commonly used in a peculiar script form with certain underscoring and other selected and decorative features.

At the time the present controversy arose the situation is thus accurately and briefly stated by Judge Hollister: "To such an extent had complainant introduced its goods at the time this suit was brought (December 2, 1915) that it had more than 3,500 agencies in the United States and Canada, and its

sales had risen to more than $300,000 annually. These drug stores display the name 'Penslar' on the front glass of the show window, or on the door of the store, and the dealer agencies are known as 'Penslar Drug Stores.' The complainant does not own the drug stores, nor has it any interest in them, so far as appears. The mark is distinctive, attracts attention, and is composed of a coined word written with peculiar characteristics. It has no meaning except as a name for complainant's goods, but it denotes origin, not only from that fact, but also because it is an abbreviation of the adjective 'Peninsular' in complainant's corporate name. The name has become identified with complainant's goods, which enjoy a high reputation for quality and reliability."

It should be added that, at this time, the plaintiff's "line" had been extended until it included more than 175 articles, each of which was called "Penslar," and was sold at the "Penslar" drug stores. It had never sold cigars.

The defendants had been engaged at Cincinnati, in a small way, making and selling cigars. They were brothers, and one had charge of producing and one of selling. The latter made his sales mostly by traveling about and by personal solicitation. Shortly before suit was brought, the defendants began to offer for sale, to the Penslar drug stores, cigars which were marked "Penslar" and "Made by the Penslar Co.," and which they offered as being made by plaintiff or in its interest. Their general representation was that plaintiff had determined to add cigars to its line, and had put out these cigars, or caused them to be put out; that defendants were engaged on behalf of plaintiff in introducing the cigars to the Penslar drug stores; and that, if the dealer would not buy them and add them to his line, it would be necessary to offer them to some competitor who did not have Penslar goods. The invoices and bills, which accompanied defendants' shipments when they made a sale, purported to be from the Penslar Company, at Cincinnati, and specially directed that all remittances and correspondence should be addressed to Cincinnati; but in spite of this plaintiff, at Detroit, received remittances and correspondence regarding the cigars.

Thereupon, plaintiff filed this bill in the court below, alleging infringement of a common-law trade-mark, infringement of a registered trade-mark, and unfair competition and asking an injunction. There was the necessary diverse citizenship to give jurisdiction on that ground. The District Court, while finding the facts as claimed by plaintiff, and while accepting, in the main, plaintiff's theories of its rights, felt constrained to dismiss the bill practically on the theory of damnum absque injuria; and plaintiff appeals.

Wm. Lucking, of Detroit, Mich. (F. T. Nelson, of Detroit, Mich., of counsel), for appellant.

Littleford, James, Ballard & Frost, of Cincinnati, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. So far as concerns the registered trade-mark and the jurisdiction and rights which rest solely thereon, plaintiff can have no relief. The certificate of registration was issued April 8, 1911, No. 52,253, and specifies that the trade-mark was used for the specified line of articles, all of which were included in "class No. 6, chemicals, medicines, and pharmaceutical preparations." Cigars are not included in this list, nor can they be said to be of the same descriptive properties as the specified articles.

2. Based upon its common-law trade-mark rights, plaintiff argues that it has adopted the name "Penslar" for articles commonly sold in drug stores; that cigars are so sold; that, although it has not yet sold cigars, it plans to do so, and that this would be a natural and ordinary

development of its business; and that it has, therefore, a right to exclude from the use of the name one who adopts it for the sole purpose of forestalling plaintiff's impending adoption. This argument presents the very interesting question as to how far, if at all, a trademark may be pre-empted or reserved in advance of actual use—a question one aspect of which was somewhat considered by this court in Rectanus v. United Drug Co., 226 Fed. 545, 549, 553, 141 C. C. A. 301 (now pending in the Supreme Court). Its special color in the present case arises from the commercial practice, not yet, as far as we know, considered in any decided case, where a manufacturer or jobber is in the course of establishing and expanding throughout the country a chain of stores which use a trade-name and handle a constantly increasing line of articles sold under that same trade-name.

We have concluded that this question, as well as the somewhat correlative argument by defendants that the terms of plaintiff's charter do not permit it to sell cigars, do not require any decision in this case. We also pass without consideration the argument that since plaintiff is not selling cigars, there is no competition at all between the parties, and so there can be no unfair competition.

[2] 3. It is not denied that the good will of a business and the good reputation of an output, when considered in connection with the business itself, are a species of property which may not be destroyed with impunity; and we know of no principle which will forbid malicious destruction of this kind to a competitor and permit it to a stranger. Indeed, it was assumed by all parties in the court below, and in this court —and we do not doubt—that malicious damage by defendants to the good will of plaintiff's business and to the good reputation of plaintiff's line of goods would be redressed by the law, and would call for an injunction where the remedy at law was not adequate. The District Court felt that the existence of such damages was not sufficiently proved and—more specifically—that the cigars were not shown to be of distinctly poorer quality than the public would expect for the price charged. It is conceivable that an article, sold under the pretenses here employed, might be of such a high quality that no damage could come to the company falsely charged with its origin; but all presumptions are the other way. There is usually no sufficient motive to sell under false cover an article of high inherent merit. When it appeared that defendants untruthfully represented that the article they were selling was, in effect, the plaintiff's article, and that they were selling for or in the interest of plaintiff, that regular customers of plaintiff bought goods in the belief that they were of high quality or else plaintiff would not have put them out, and that certain customers found the goods unsatisfactory and unsalable, except at a sacrifice, we think there arose a sufficient presumption of threatened pecuniary injury to plaintiff to call for the injunction. Not only was there reasonable ground for apprehending injury to the high reputation of plaintiff's goods among its dealers and among consumers, but also the causing of a large number of dealers in different parts of the country to suppose that they had entered into contracts with plaintiff, when, in fact, they had not, was reasonably sure to produce trade disputes and complications lead-

ing to expenditure of valuable time and efforts to remove the false impression, even if it did not lead to the costs and expenses of actual litigation. That this is a kind of injury of which the law must take notice seems to us the necessary result of the fundamental principles involved; but if somewhat specific support in precedent is desired, it may be found in Eastman Co. v. Cycle Corp., 15 Patent Cas. 105, and Walter v. Ashton, [1902] 2 Chancery, 282. In the former of these cases, it was held that a defendant should not be allowed to sell "Kodak Bicycles," because of the injuries naturally resulting to the established trade in "Bicycle Kodaks"; and, in the latter, the defendant was not allowed to call its bicycle a "Times" bicycle, and represent that it was made by or for the newspaper of that name.

[3] 4. We have said that defendants held themselves out as selling for plaintiff. This is proved as against S. W. Levinson, the traveling salesman; Samuel Levinson, the manufacturer, denies that he authorized any such claims. If it were to be believed that he gave no express authority, that would make no difference, because his equivalent action must be inferred. It is true that the mere adoption of a trade word, which carries some color of description or of quality (as "Aluminum," in American Co. v. Saginaw Co. [C. C. A. 6] 103 Fed. 281, 43 C. C. A. 233, 50 L. R. A. 609), or the mere adoption of a not uncommon proper name, to which defendant, as against plaintiff, has no good-faith right (as "Borden" in Borden Co. v. Borden Co. [C. C. A. 7] 201 Fed. 510, 121 C. C. A. 200), may not alone be enough to prove that a defendant claims to be handling a plaintiff's output; but when, in this case, we find a word of arbitrary form, which also is a plain imitation of plaintiff's name, and find it used with the peculiar script and decorations of plaintiff, and find it so marked on goods offered for sale by defendants to plaintiff's dealers under such a system as existed here, there is no escape from the inference that both defendants indirectly made the same representations. which S. W. Levinson made in express words. It must be remembered also that plaintiff's system of expanding business, and the systems followed by similar houses and well known to the dealers, made it a naturally to be expected thing that plaintiff should add cigars to its line, and the normal implications from the complete adoption of plaintiff's dress are affected by this well understood situation.

[4] 5. Defendants rely upon the equitable defense of "unclean hands," supplemented by the supposed effect of the Pure Food Law in absolutely prohibiting misbranding. As has been stated, the plaintiff is, in effect, a distributor in the United States, of pharmaceutical supplies made by the Nelson-Baker Company, at Detroit, and of other supplies which it buys from others. It also maintains, in Canada, its own place of manufacture for pharmaceutical goods to be there sold. This is in accordance with the familiar practice, induced by the Canadian customs law. Plaintiff's articles, which are in bottles, carry, at the bottom of the label, in large and prominent characters, the following:

"PENINSULAR CHEMICAL COMPANY,
"(Incorporated) Distributors,
"DETROIT MICHIGAN."

Some of them also carry, in another part of the label, and less prominently displayed, the words, "Canadian Laboratory, Peninsular Chemical Co., Ltd., Walkerville, Ont." If this were to receive defendant's coloring, we doubt whether there would be any material misrepresentation which would affect the relief to which plaintiff was otherwise entitled (Jacobs v. Beecham, 221 U. S. 263, 31 Sup. Ct. 555, 55 L. Ed. 729); but we fail to find any falsity whatever. Reasonably interpreted, this label is the statement of the Peninsular Chemical Company, of Detroit, that certain goods sold in Canada are made in Canada; and this is true. The defense of "unclean hands" is without substance.

[5] 6. Where the actual damages suffered are difficult to establish with precision or perhaps impossible of ascertainment, and where the prevention of threatened future injury is the substantial thing, an injunction will be awarded even though there is no sufficient basis for the accounting. Ludington Co. v. Leonard (C. C. A. 2) 127 Fed. 155, 62 C. C. A. 269; Gaines v. Rock Spring Co. (C. C. A. 6) 226 Fed. 531, 543, 141 C. C. A. 287. This seems to be such a case, though this conclusion is without prejudice to plaintiff's right to an accounting below, if it can make a prima facie showing of computable damages.

[6] 7. A defendant whose business enterprise is based upon express and deliberate fraud will not find a court of equity strenuous to preserve all rights he might have had if his conduct and motives had been honest. Coca-Cola Co. v. Gay-Ola Co., 200 Fed. 720, 723, 724, 119 C. C. A. 164. A leading firm of manufacturing pharmacists, in Detroit, sold a line of remedies and drug store sundries under the name "Nyall," through "Nyall Stores"; defendants, who had officially registered their Cincinnati cigar business under the name "Wyandotte Cigar Company," put out a line of "Nyall" cigars, over the name of "Nyall Cigar Co.," and tried to place them in the "Nyall Stores." The plaintiff, with its "Penslar" goods, found the defendants doing a similar thing; defendants had even announced their intention of selling "Rexall" cigars for distribution to the Rexall drug stores. If the defendants have used, or have any intention of using, the word "Penslar" in some manner which would not be within the condemnation we have expressed, such use or intention has not been disclosed. Until it is, it will be premature to speculate how far that can be done. The injunction will prohibit defendants from representing that cigars offered for sale by them are made by the plaintiff, or sold by its permission, or in its interest, or that plaintiff has any interest, direct or indirect, in such manufacture or sale, and from using, in connection with such cigars, the word "Penslar" in the same or in substantially the manner and form in which the word has been used by them.

The decree below is reversed, and the case remanded for a new decree in accordance with this opinion.