## VOGUE CO. v. THOMPSON-HUDSON CO. et al.

(Circuit Court of Appeals, Sixth Circuit. August 2, 1924.)

No. 4066.

1. **Trade-marks and trade-names and unfair competition ⊘68—Use of word "Vogue" and letter "V" as mark for hats held unfair competition with magazine publisher.**

 Use of word "Vogue" as a label on hats and letter "V" in such a relatively large size as to dominate its surroundings, *held* unfair competition as to publisher making similar use of word "Vogue" and letter "V" in connection with a magazine which had become an arbiter of style, entitling publisher to injunction, though use of word "Vogue" alone would not have been sufficient to justify such relief; it being one of common right.

2. **Trade-marks and trade-names and unfair competition ⊘68—"Unfair competition" defined.**

 "Unfair competition" is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another.

 [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by the Vogue Company against the Thompson-Hudson Company and the Vogue Hat Company. From a decree dismissing the bill, complainant appeals. Decree vacated, and case remanded for further proceedings.

Harry D. Nims, of New York City (E. J. Marshall, of Toledo, Ohio, and MacDonald De Witt and Minturn De S. Verdi, all of New York City, on the brief), for appellant.

Samuel W. Banning, of Chicago, Ill. (Ephraim Banning, Thomas A. Banning, and Thomas A. Banning, Jr., all of Chicago, Ill., Charles H. Studin, of New York City, and Rathbun Fuller, of Toledo, Ohio, on the brief), for appellees.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The plaintiff below, appellant here, is the publisher of a magazine known as "Vogue." This publication began in 1892. Plaintiff then adopted and has since used what it has

⊘For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

claimed to be its two trade-marks: First, the arbitrary name "Vogue"; and, second, a large-sized capital letter "V," carrying between its sides the figure of a woman, which mark it calls the "V-Girl." The name has been used as the name of the magazine and in many collateral ways; the "V-Girl" has been displayed constantly on the magazine and in the advertising literature of and by the magazine and collateral enterprises. Alleging trade-mark infringement and unfair competition, defendant brought this suit against a department store in Toledo, based upon sales by its millinery department of hats carrying the name and label said to infringe. The Vogue Hat Company, a New York corporation, manufacturer of the hats so sold, was permitted to intervene, and seems to have conducted the defense.

[1] The District Court thought that, so far as the case counted on unfair competition, it must be dismissed, because there was no competition between the publishing of the magazine and the manufacture of hats, and that, so far as it counted on trade-mark infringement, it failed, because magazines and hats are not articles "of the same descriptive qualities." The plaintiff's mark, used as the initial letter of its name, and extending far above and below the remainder of the name, is: .

Defendants' label, carried on a band across the interior of the crown of its hats, is:

It appears that from the beginning the magazine assumed to be an interpreter of and authority upon style in women's wear, and that, from an early stage, it has devoted a considerable share of its efforts in this direction to millinery. There is no doubt that, prior to 1912, the magazine had become, the country over, one of the dominating factors in the creation and promotion of styles, including those in millinery,

and its approval or promotion of any pattern or style in its pages carried great influence. In 1912 the Vogue Hat Company was organized, and in 1913 it began to mark its hats with the above label. These hats, so manufactured, were put on sale by retailers throughout the country. There is no reason to doubt that this course of conduct by the defendant manufacturer and its retailers created a very common alternative impression—first, that these hats were manufactured by the plaintiff; or, second, that, although some knew that plaintiff was not manufacturing, yet these hats were in some way vouched for or sponsored or approved by the plaintiff. Such an impression is obviously one that would be inevitable, there is abundant proof that the average purchaser in different parts of the country so believed, and there is no reason to doubt that the saleswomen of the defendant retailer, who thus represented in express terms to inquiring customers, were speaking what they believed to be the truth. Save for the obstacles which have been mentioned, and which the District Court thought insuperable, the plaintiff's case for relief is too clear for question.

So far as plaintiff's rights are based upon the mere use of the word "Vogue" in the phrase "Vogue Hats," we think the District Court was right. The word itself was by no means arbitrary. In 1892, as since, the word was one of common right. It was approximately synonymous with "style" or "fashion." If it had been during a long period exclusively applied by a manufacturer to its product, a forceful secondary meaning might or might not have arisen; but it has not been so applied. In so far as it went beyond merely indicating the magazine, it has been constantly used in substantially a descriptive way, and in that way there could not be, nor has there been, any exclusive use by plaintiff. The record informs us that "Vogue Shops," selling various kinds of apparel, have been and are very common throughout the country. Plaintiff's claim of monopoly along this line logically embraces them all; and though, particularly as to women's apparel, there is likely to be a considerable element of mistake on the part of purchasers who suppose that the use of the word indicates some connection with the magazine, it is a mistake for which plaintiff must carry the responsibility, because it chose as the name of its magazine a word which all are at liberty to use.

When we come to the use by defendant of the capital letter "V" in its peculiar relations to the label, the case has a different aspect. The capital letter "V," displayed in such relatively large size that it dominates its surroundings, and whether or not it carries the inclosed figure of a woman, has been an individual characteristic of the plaintiff company in all its publications and advertisements in which it has used the word "Vogue." The defendant has adopted this characteristic; the differences in the inclosed woman's figure are immaterial, and only emphasize an obvious intent to leave a loophole of escape, while getting the full benefit of the copying. Whether we consider the case as one of technical trade-mark or so-called unfair competition, and if we consider plaintiff's rights as confined to the use of this "V-Girl" and the capital letter "V" in its dominating relation to the remainder of the word, the defendants' appropriation of plaintiff's dress is not to be disputed.

For the purpose of this opinion, but without intimating a decision, we assume that relief could not be given under the law of technical trade-marks. Whether the commonly applicable rule, that the trade-marked product and the infringing article must be of the same descriptive qualities, should be modified and adapted to meet such a case as this, can be passed until necessary for decision.

[2] We come, then, to what is called "unfair competition." This is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another. This rule is usually invoked when there is an actual market competition between the analogous products of the plaintiff and the defendants, and so it has been natural enough to speak of it as the doctrine of unfair competition; but there is no fetish in the word "competition." The invocation of equity rests more vitally upon the unfairness. If B. represents that his goods are made by A., and if damage therefrom to A. is to be seen, we are aware of no consideration which makes it controlling whether this damage to A. will come from market competition with some article which A. is then manufacturing or will come in some other way. The injury to A. is present, and the fraud upon the consumer is present; nothing else is needed. This is the principle upon which the two English bicycle cases were decided. Walter v. Ashton [1902] 2 Ch. Div. 282; Eastman Co. v. Kodak Co., 15 Rep. Pat. Cases, 105. It was also at the bottom of our own decision in Peninsular Co. v. Levinson, 247 Fed. 658, 159 C. C. A. 560, and of Akron Co. v. Willys Co. (C. C. A. 3) 273 Fed. 674; Imperial Co. v. Fairbanks Co., 50 App. D. C. 250, 270 Fed. 686; Aunt Jemima Co. v. Rigney (C. C. A. 2) 247 Fed. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039. We have no doubt it is a sound principle, and should be applied in appropriate cases.

In this case the reasonable probability of injury to plaintiff through defendants' misrepresentation is clear, even if it has not actually occurred. Plaintiff's magazine is so far an arbiter of style, and the use of plaintiff's trade-mark upon defendants' hats so far indicates that the hats were at least sponsored and approved by the plaintiff, that the same considerations which make the misrepresentation so valuable to defendants make it pregnant with peril to plaintiff. It seems not extreme to say, as plaintiff's counsel do, that persistence in marking under this trade-mark articles of apparel which are unfit, undesirable, or out of style would drive away thousands of those who customarily purchase plaintiff's magazine. This record makes a case entirely fit for the application of the principle just discussed; and plaintiff was entitled to an injunction against the further use either of the "V-Girl" or the "V," not in its ordinary use as a capital letter, but as the dominating feature of the label.

However, we find no satisfactory basis for an accounting against either the manufacturer or retailer for profits or damages. The case is peculiarly one where such damage as has occurred, like that which is still in prospect, is incapable of computation. We see no reasonable probability that any substantial damages could be proved and reduced to dollars and cents with that degree of accuracy that is essential in such a case. Nor does this conclusion—that there should be no accounting—make it necessary to decide whether plaintiff is entitled to relief

strictly as for trade-mark infringement. Those cases in which plaintiff in such a suit has been awarded all the profits which defendant received from the sale of the articles wrongfully trade-marked, have been cases in which, by the theory of the law, the plaintiff had lost the sales. The plaintiff's relief will therefore be confined to the issue of an injunction and the recovery of taxable costs of both courts.

Since the misrepresentation put by defendant manufacturer upon the label requires the injunction, it is unnecessary to differentiate the case more expressly made against the retailer. The other grounds urged in defense have not impressed us.

The decree dismissing the bill is vacated, and the case remanded for further proceedings pursuant to this opinion.