## WALL v. ROLLS–ROYCE OF AMERICA, Inc.

(Circuit Court of Appeals, Third Circuit. March 5, 1925.)

### No. 3265.

Trade-marks and trade-names and unfair competition ⊘61—Use of similar name by another enjoined.

Complainant, Rolls-Royce of America, Inc., organized for the purpose of extending in America the business of the British corporation, Rolls-Royce, limited, manufacturer of automobiles and aeroplanes, *held* entitled to an injunction against the use of the name "Rolls-Royce Tube Company" by defendant in conducting a mail order business for sale of radio tubes, in which his own name was not used, there being no legitimate purpose to be served by the adoption of such name, which, to the extent that it enhanced defendant's standing, endangered that of complainant.

Appeal from the District Court of the United States for the District of New Jersey; Wm. N. Runyon, Judge.

Suit in equity by Rolls-Royce of America, Inc., against Howard Wall, doing business under the name Rolls-Royce Tube Company. Decree for complainant, and defendant appeals. Affirmed.

Samuel H. Nelson, of Newark, N. J., for appellant.

Arthur F. Egner, of Newark, N. J., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. The appellant, Howard Wall, doing business under the name Rolls-Royce Tube Company, assigns for error the action of the Court below in enjoining him from using the name Rolls-Royce in carrying on his individual business. From the record and statement made at bar it appears Rolls-Royce is a hyphenated combination of the family names of the two founders of the British Corporation, Rolls-Royce, Limited; that said firm manufactured automobiles and aeroplanes and parts thereof; that by reason of the high standard of its product and the volume and spread of its trade the name Rolls-Royce has become associated all over the world with the excellence of its product, and is associated in the public mind with high-grade work, and gives its owners an established, distinctive, and valuable business asset; that the plaintiff, Rolls-Royce of America, Incorporated, is a Delaware corporation, chartered in 1919 for the purpose of acquiring, extending, and increasing in the United States the business of the British Rolls-Royce Company, and has since been engaged in said business of making automobiles, aeroplanes, and parts thereof; that the defendant is an individual engaged in the business of selling radio tubes by mail; that he has no connection with either of said Rolls-Royce companies; that he has no one associated with him in business, and no connection with or permission from any person by the name of Rolls-Royce, nor any license from either of said companies to use said names of Rolls-Royce; that trading as an individual, and without any person being associated with him, or without any incorporation by that name, and without his individual name being used, he has entered into a mail order business, where he does not come into personal contact with customers, but procures them by advertisements which do not mention him as an individual, but use the name "Rolls-Royce Tube Company." His advertisements describe his radio tubes by quotation marks as "Rolls-Royce" radio tubes, and that such tubes are, "like their name, significant of quality." The advertisement directs correspondence be sent to "Dept. A. of the Rolls-Royce Tube Company," thus giving the suggestion of a business made up of this and other departments. The tubes so sent out are prominently labeled "Rolls-Royce," with no indicia of place or origin of manufacture.

From the pleadings and statements made at the argument, it is clear that the purpose of Wall was to take and use the good will, fair name, and trade record which the two

companies had, through years of business integrity, given to the name "Rolls-Royce," and thereby create in the minds of the public the impression that his mail order tubes bore some connection with the real Rolls-Royce companies. Upon no other theory than a purposed appropriation to himself, and an intent to convey to the public a false impression of some supposed connection with the Rolls-Royce industries, can Wall's actions and advertisements be explained. Seeing, then, that by putting his individual business under the name "Rolls-Royce," and utilizing its trade reputation and earned good will, Wall could greatly benefit himself, the converse of the proposition follows: That this veiling of his business under the name "Rolls-Royce" might, and indeed almost surely would, injure the real Rolls-Royce industries, and, substantially detract from their good will and fair name. It is true those companies made automobiles and aeroplanes, and Wall sold radio tubes, and no one could think, when he bought a radio tube, he was buying an automobile or an aeroplane. But that is not the test and gist of this case. Electricity is one of the vital elements in automobile and aeroplane construction, and, having built up a trade-name and fame in two articles of which electrical appliances were all important factors, what would more naturally come to the mind of a man with a radio tube in his receiving set, on which was the name "Rolls-Royce," with nothing else to indicate its origin, than for him to suppose that the Rolls-Royce Company had extended its high grade of electric product to the new, electric-using radio art as well. And if this Rolls-Royce radio tube proved unsatisfactory, it would sow in his mind at once an undermining and distrust of the excellence of product which the words "Rolls-Royce" had hitherto stood for.

In addition to what has been said, it is quite possible that the use of such a name might lead third parties to credit the plaintiff's business, on account of its name of "Rolls-Royce," with an unwarranted financial reliability, and if such assumptions eventually prove unfounded the name of "Rolls-Royce" would suffer accordingly. Indeed, from the standpoint of commercial integrity, fair business, and trade equity, we feel the court below, sitting in equity, was justified in preventing the defendant from veiling his business under the name of "Rolls-Royce," for he had, and could have had, but one object in view, namely, to commercially use as his own a commercial asset that belonged to others, the continued use and abstraction of which is so fraught with such possibilities of irremediable injury that the only way to remedy it is to stop it at the start.

The decree below is affirmed.