## DURO CO. v. DURO CO.

District Court, D. New Jersey. August 4, 1927.

**Trade-marks and trade-names and unfair competition ⟜61—Corporation producing electrical apparatus, using word "Duro," could restrain use thereof by corporation on spark plugs, where purchasers were probably misled.**

Corporation producing electrical apparatus, such as switches, solnoids, electrical motors, electric-driven pumps, etc., using the word "Duro," which appeared on its products in block letters, sometimes in a triangle, and being the first to adopt the name "Duro" as applicable to its electrical products, *held* entitled to restrain corporation, recently embarking in the manufacture of spark plugs marked with the word "Duro" in form of a big elongated "D" with a little "u-r-o" inside, crossed by a double-headed red arrow, in view of probability that purchasers were misled.

Decree affirmed 27 F.(2d) 339.

H. A. Toulmin, Sr., and H. A. Toulmin, Jr., both of Dayton, Ohio, and H. C. Minton, Jr., of Trenton, N. J., for plaintiff.

Edward G. Fenwick, of Washington, D. C., and Arthur T. Vanderbilt, of Newark, N. J., for defendant.

BODINE, District Judge. The plaintiff is an Ohio corporation. Since 1916 it has produced electrical apparatus of various sorts, such as switches, solnoids, electrical motors, electric-driven pumps, electric-driven pneumatic water systems, and internal combustion engines of the smaller types used on farms, mines, and in villages for supplying a source of power where electric current is not available. And these products have been continuously marked "Duro."

A great business, running into the millions, has been built up. Nearly $2,000,000, directly and indirectly, has been expended on advertisements. Four Patent Office registrations have been secured. The first has to do particularly with electric apparatus, the others with lighting and pumping outfits, and the last with mechanism electrically driven or electrically operated in various fashions.

The plaintiff has sold its electrical devices and internal combustion engines with the aid

of 10,000 jobbers and 300 salesmen. The product has become a household necessity in farming districts, and the word "Duro" has become a household word indicative of plaintiff's product. Sometimes the word "Duro" has appeared in block letters; sometimes in a triangle. Sometimes the word has been stenciled upon the product, while at other times it has been directly applied, or the article has been tagged. So closely has the word been considered in connection with these electrical appliances and engines that the trade has regarded the word "Duro" as having sole applicability to plaintiff's goods, and finally, in 1925, the Patent Office granted registration.

The plaintiff's corporate title was from time to time changed more closely to identify the manufacturer with the product. The defendant, however, first adopted the corporation name. Since the plaintiff was for years a national advertiser, and its goods were sold as early as 1916 in New Jersey under the trade-name "Duro," it is obvious that the defendant realized the full purport of plaintiff's priority.

The only previous use of the word "Duro" with electrical appliances was by the old Chicago Battery Company, which long before the plaintiff's advent passed out of the picture. The defendant quite recently embarked on a commercial scale in the manufacture of spark plugs at Newark, N. J. The plugs are marked with the word "Duro." The printing used is a big elongated "D," with a little "u-r-o" inside, crossed by a double-headed red arrow. It is of this that the plaintiff complains.

As to the allegations of unfair competition, the defense is that the product and goods of the two companies are so different and the markings are so different—the plaintiff sometimes using a triangle and bar with the word "Duro," while the defendant uses the big "D" with the little "u-r-o" within, crossed by a double-pointed red arrow—that there is no unfair competition.

The defenses to the charge of trade-mark infringement are: First, that defendant was the first to use the name "Duro" on spark plugs; second, that the word "Duro" was so common for years prior to its adoption by the parties to the suit, both as to the name of individuals and corporations, as to have no quality capable of becoming a subject of copyright, except with other distinguishing marks; third, that "Duro" has been so commonly used that it had no property of indicating origin of itself.

The defendant's business history dates

back to 1919. A partnership seems to have been formed to deal in automobile accessories. Little came of the adventure, which was confined to a spark plug cleaning brush and other simple things, until a corporation was formed in 1920 under the name of the Duro Company. This company made spark plugs and sold a few under the trade-name "Duro." They now have a small factory and possibly 100 employees. The plugs are sold principally in the East.

On the question of unfair competition, it may be noted that the name "Duro" was used with plaintiff's electrical product since 1916; that large sums of money were expended upon advertising and marketing these goods, so as to establish a valuable property in the name. Obviously the defendant did not use the word "Duro" until three years after the plaintiff's Duro engines had been sold in New Jersey. The Supreme Court said:

"What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution, are likely to be misled." McLean v. Fleming, 96 U. S. 251, 24 L. Ed. 828.

"The term [trade-mark] has been in use from a very early date, and, generally speaking, means a distinctive mark of authenticity, through which the products of particular manufacturers or the vendible commodities of particular merchants may be distinguished from those of others. It may consist in any symbol or in any form of words, but as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trade-mark, which from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose.

"And the general rule is thoroughly established that words that do not in and of themselves indicate anything in the nature of origin, manufacture or ownership, but are merely descriptive of the place where an article is manufactured or produced, cannot be monopolized as a trade-mark. * * *

"The name 'Elgin,' " it is contended has "acquired a secondary signification in connection with its use by appellant, and should not, for that reason, be considered or treated as merely a geographical name. It is undoubtedly true that where such a secondary

signification has been acquired, its use in that sense will be protected by restraining the use of the word by others in such a way as to amount to a fraud on the public, and on those to whose employment of it the special meaning has become attached.

"In other words, the manufacturer of particular goods is entitled to the reputation they have acquired, and the public is entitled to the means of distinguishing between those, and other, goods; and protection is accorded against unfair dealing, whether there be a technical trade-mark or not. The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another." Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 673, 674, 21 S. Ct. 273, 45 L. Ed. 365.

The plaintiff was the first to adopt the name "Duro" as applicable to its electrical product. By the unwarranted use by the defendant of this name undoubtedly purchasers were misled. A man purchasing a Duro engine, and requiring a new spark plug, would undoubtedly seek a Duro plug. The Duro plugs are made of a size to fit exactly in the Duro engine. The difference in letter arrangement would not enable the purchaser to detect the simulated article. The plaintiff is entitled to the reputation his goods have acquired under the term "Duro," whether this name be a surname or not, and whether it is a technical trade-mark or not. The essence of the wrong is the sale of these electrical goods for those of the plaintiff.

The Court of Appeals for the District of Columbia in Duro Pump & Mfg. Co. v. California Cedar Products Co., 56 App. D. C. 156, 11 F.(2d) 205, held that the Duro Company, the plaintiff here, was the originator of the mark "Duro," and further said, in granting exclusive registration:

"While the descriptive properties of the products of the two companies are technically different, both are used in residences, and under the evidence, we are constrained to the view that their concurrent use would tend to confusion of the identity of the Duro Company. If the California Cedar Products Company were permitted to use this mark, which has come to represent the Duro Company and its product to the public, other companies likewise might use it, with resultant loss of identity of the Duro Company."

The Circuit Court of Appeals for the Third Circuit, Judge Buffington speaking for the court, said, in Wall v. Rolls-Royce of America, 4 F.(2d) 333, affirming a decision of this court in restraining Wall from doing business under the name of Rolls-Royce Tube Company:

"From the pleadings and statements made at the argument, it is clear that the purpose of Wall was to take and use the good will, fair name, and trade record which the two companies had, through years of business integrity, given to the name 'Rolls-Royce,' and thereby create in the minds of the public the impression that his mail order tubes bore some connection with the real Rolls-Royce companies. Upon no other theory than a purposed appropriation to himself, and an intent to convey to the public a false impression of some supposed connection with the Rolls-Royce industries, can Wall's actions and advertisements be explained. Seeing, then, that by putting his individual business under the name of 'Rolls-Royce,' and utilizing its trade reputation and earned good will, Wall could greatly benefit himself, the converse of the proposition follows: That this veiling of his business under the name 'Rolls-Royce' might, and indeed almost surely would, injure the real Rolls-Royce industries, and substantially detract from their good will and fair name. It is true those companies made automobiles and aeroplanes, and Wall sold radio tubes, and no one could think, when he bought a radio tube, he was buying an automobile or an aeroplane. But that is not the test and gist of this case. Electricity is one of the vital elements in automobile and aeroplane construction, and, having built up a trade-name and fame in two articles of which electrical appliances were all important factors, what would more naturally come to the mind of a man with a radio tube in his receiving set, on which was the name 'Rolls-Royce,' with nothing else to indicate its origin, than for him to suppose that the Rolls-Royce Company had extended its high grade of electric product to the new, electric-using radio art as well. And if this Rolls-Royce radio tube proved unsatisfactory, it would sow in his mind at once an undermining and distrust of the excellence of product which the words 'Rolls-Royce' had hitherto stood for."

The facts and law stated by the same court in Akron-Overland Tire Co. v. Willys-Overland Co., 273 F. 674, seem clearly applicable to the facts in this case. There a small concern engaged in retreading tires adopted the name of Akron-Overland Tire Company. Willys-Overland Company did not make tires, but did manufacture automobiles. Judge Buffington said:

"Moreover, with a practically unlimited

field of distinctive names open to it for choice, when the defendant lately entered the automobile industry, the fact that it chose to take a name that had no connection or association with the automobile trade, except the good will and association which the plaintiff had given it, shows conclusively that the name was given to this new venture in the automobile field because of its established high regard in that industry, which had been given it by the plaintiff."

An injunction may issue.