## WISCONSIN ELECTRIC CO. v. DUMORE CO.*

Circuit Court of Appeals, Sixth Circuit.
November 9, 1929.

No. 5118.

*Rehearing denied January 13, 1930.

556

George B. Jones, of Chicago, Ill. (Greer Marechal, of Dayton, Ohio, and Walter F. Murray, of Cincinnati, Ohio, on the brief), for appellant.

Edward L. Reed, of Dayton, Ohio, for appellee.

Before MOORMAN, HICKS, and KNAPPEN, Circuit Judges.

HICKS, Circuit Judge. The plaintiff, Wisconsin Electric Company of Racine, Wis., claiming to be the owner of registered trade-marks No. 96,766 and No. 119,596, sought an injunction against defendant's alleged infringement thereof and in the alternative against defendant's alleged acts of unfair competition. The bill also sought an accounting.

Jurisdiction depends as to the first claim upon the trade-mark laws and as to the second upon diverse citizenship and the amount in controversy. The defendant, the Dumore Company of Dayton, Ohio, denied (1) the jurisdiction of the court upon the claim for unfair competition; (2) the validity of the trade-marks; and (3) any infringement. The court sustained the trade-marks as valid, and held that they were not infringed, but found that the word "Dumore," plaintiff's alleged trade-mark, had acquired a secondary meaning, and, as incidental to its jurisdiction under the trade-mark laws, enjoined defendant from using it in connection with its corporate name, the Dumore Company. In compliance defendant changed its name to "Dayton Washer Company," and did not appeal. Plaintiff appealed.

The trade-mark 119,596, over which is the chief controversy, adopted by plaintiff in 1913, and registered November 27, 1917, consisted of the word "Dumore," and had been used on its products, to wit, electric sewing machine motors, electric polishers and buffers, portable electric grinders, portable electric grills, electric cloth cutters, electric hair driers, electric shoe driers, and electric drink mixers. It was made up from the words "Do" (misspelled) and "more." The defendant company was organized in August, 1926, for manufacturing electric washing machines. It went into production in January, 1927, and over notice and protest from plaintiff adopted the same word in the same form for its trade-mark.

The primary question upon plaintiff's claim of unfair competition is, of course, that of jurisdiction. The court declined jurisdiction upon this feature upon the idea that "the right in controversy is the right to use the trade-mark 'Dumore' upon washing machines, or, conversely stated, perhaps, the value in controversy may be said to be the damage to the complainant from such alleged wrongful use." The court held that this alleged right of defendant was not shown to be in excess of $3,000 in value, and indeed not shown to be valuable at all, because defendant had just started in business, and that, because there was no competition between plaintiff and defendant in the same class of merchandise, plaintiff had not suffered damages in any substantial amount. We think jurisdiction depends, not alone upon the pecuniary damage resulting from the acts complained of, but also upon the value of the rights which plaintiff seeks to have protected. Hunt v. New York Cotton Exchange, 205 U. S. 332, 335, 27 S. Ct. 529, 51 L. Ed. 821; Bitterman v. L. & N. R. R. Co., 207 U. S. 205, 225, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 125, 36 S. Ct.

30, 60 L. Ed. 174; Western & A. R. R. Co. v. Railroad Comm'n, 261 U. S. 264, 267, 43 S. Ct. 252, 67 L. Ed. 645.

The plaintiff alleged the requisite jurisdictional amount,—the defendant denied it in its answer only. There was no formal plea to the jurisdiction, and it was not therefore incumbent upon the plaintiff to offer proof in support of it. Bitterman v. L. & N. R. R. Co., supra, at page 224 of 207 U. S., 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693. Nevertheless, plaintiff's proof tended to show value in the word as applicable to its business, and, even upon the assumption that the denial in the answer presented an issue, the burden fell upon defendant to establish, by a preponderance of the evidence, that the jurisdictional amount was not involved. Hunt v. N. Y. Cotton Exchg., supra, at page 333, of 205 U. S., 27 S. Ct. 529, 51 L. Ed. 821. We find no merit in the attack upon the court's jurisdiction.

As to the validity of the word "Dumore" as a trade-mark: The District Court inclined to the belief, and our judgment is, that this "made up" word was descriptive of the characteristics of the electric tools and appliances manufactured and sold by plaintiff. It rather clearly signified to any prospective purchaser that these tools had superior capabilities. See Delaware & H. Canal Co. v. Clark, 80 U. S. 311, 328, 20 L. Ed. 581; Standard Paint Co. v. Trinidad Asph. Mfg. Co., 220 U. S. 451, 454, 31 S. Ct. 456, 55 L. Ed. 536; Barton et al. v. Rex-Oil Co., Inc. (C. C. A.) 2 F.(2d) 403, 404; Ungles-Hoggette Co. v. Farmers' Hog & Cattle Powder Co., 232 F. 116, 118 (C. C. A. 8); Lawrence Mfg. Co. v. Tenn. Mfg. Co., 138 U. S. 537, 547, 11 S. Ct. 396, 34 L. Ed. 997; Jell-Well Dessert Co. v. Jell-X-Cell Co. (C. C. A.) 22 F.(2d) 522, 523; Computing Scale Co. v. Standard Computing Scale Co., 118 F. 965, 967 (C. C. A. 6); A. J. Krank Mfg. Co. v. Pabst, 277 F. 15, 18 (C. C. A. 6).

It falls in the class with such terms as "Computing" as applied to scales (Computing Scale Co. v. Standard Computing Scale Co., supra); "Happy" as applied to horse feed (Alfocorn Milling Co. v. Edgar-Morgan Co., 282 F. 394 [C. C. A. 8]); "Keep Clean" as applied to tooth brushes (Florence Mfg. Co. v. Dowd & Co., 178 F. 73 [C. C. A. 2]); "Stabrite" as applied to polish (In re Chas. R. Long, Jr., Co., 51 App. D. C. 399, 280 F. 795); "Dyanshine" as applied to leather dressing (Barton v. Rex Oil Co., supra); "Instantaneous" as applied to tapioca (Bennett v. McKinley [C. C. A.] 65 F. 505); "Dry Dip" as applied to vermin powder (Ungles-Hoggette Mfg. Co. v. Farmers' Hog & Cattle Powder Co., supra); and "Infallible" as applied to smokeless powder (Hercules Powder Co. v. Newton, 266 F. 169 [C. C. A. 2]). Any other manufacturer of electrically driven tools might employ the word with equal right. Plaintiff's trade-mark being held invalid, this feature of its suit must fail.

This leaves for consideration plaintiff's claim of unfair competition. There was never any competition between the parties in their manufactured products. The plaintiff never made or sold washing machines, and the defendant never made or sold anything else. But this equitable doctrine is not confined to cases of actual market competition between similar products of the parties. It extends to all cases in which one party fraudulently seeks to sell his goods as those of another. Vogue Co. v. Thompson-Hudson Co., 300 F. 509, 512 (C. C. A. 6); Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 235 F. 657, 664 (C. C. A. 6); Peninsular Chemical Co. v. Levinson, 247 F. 658, 661 (C. C. A. 6); Akron-Overland Tire Co. v. Willys-Overland Tire Co., 273 F. 674, 676 (C. C. A. 3); Wall v. Rolls-Royce of America, 4 F.(2d) 333, 334 (C. C. A. 3).

Prima facie there is no fraud or misrepresentation in using as a mark upon his goods any word one chooses, even though another dealer in the same line has already adopted it. This is so because, ordinarily, all have equal rights in the use of language, but, if through its long use as applicable to a particular product or business a word has come to have a "secondary meaning," he who has thus adopted it is entitled to protection. It is unnecessary to dwell on the phrase "secondary meaning." It has been accurately defined in Merriam v. Saalfield, 198 F. 369, 373 (C. C. A. 6). See, also, Upjohn Co. v. Wm. S. Merrell Chem. Co., 269 F. 209 (C. C. A. 6); Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., supra; Standard Paint Co. v. Rubberoid Roofing Co., 224 F. 695 (C. C. A. 7).

Controlled by these cases, we conclude that, although invalid as a technical trade-mark, the word "Dumore" is abundantly shown to have acquired a secondary meaning as applicable to plaintiff's business. Plaintiff has used it as a trade-mark since its organization in 1913. It has placed it on all its products, except on such of its small motors as it sold to other manufactur-

558

ers. Plaintiff's gross business for the fourteen years of its existence has been more than $5,000,000. During the year 1926 it amounted to $1,132,000. About 65 per cent. of this represented products to which the word "Dumore" was applied. These products had acquired an enviable reputation for superior excellence and quality. The name of its home office building is the Dumore building. It frequently receives letters addressed to the Dumore Company. It advertises extensively in magazines and trade journals. For this advertising it has expended in the last few years more than $35,000 annually. The word "Dumore" is always displayed in bold type in these advertisements. Their products are generally known in the trade as "Dumore" products, and are advertised and called for as such by the retail trade. Their representatives are frequently referred to as "the Dumore men."

■ While there can be no recovery in an action for unfair competition except upon proof of fraud or wrongful intent in fact (Samson Cordage Works v. Puritan Cordage Mills, 211 F. 603, 608, L. R. A. 1915F, 1107 [C. C. A. 6]; Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., supra), yet that intent may be established by circumstances (M. C. Peters Milling Co. v. Internat. Sugar Feed No. 2 Co. [C. C. A.] 262 F. 336, 340; O. & W. Thum Co. v. Dickinson, 245 F. 609, 610, 621 [C. C. A. 6]). Judge Warrington, delivering the opinion in the latter case, said:

"Scarcely anything of an evidential nature, for example, could more certainly characterize intent than repeated imitation of material parts of another person's trade tokens; the imitations themselves reveal the object."

See, also, Wall v. Rolls-Royce of America, supra; S. S. Kresge Co. v. Champion Spark Plug Co., 3 F.(2d) 415, 419 (C. C. A. 6).

■ Defendant was incorporated in August, 1926. Out of all the corporate names it might have chosen, it styled itself "The Dumore Company." Out of the entire field of trade-names it chose the same word "Dumore," which plaintiff had used for sixteen years. It made up this word from the words "Do" and "more" just as plaintiff had done. It used capital letters as in the drawing in plaintiff's application for the mark. Before it went into production it was given notice of the strong probability of confusion in the trade due to its adoption of the word. After production began, it was again notified, but persisted in its use. It designed and used a label for its products in which the word "Dumore" is given prominence. On the label is printed the words "The Dumore Company, Dayton, Ohio, U. S. A.," but this name and address inconspicuous as compared with the word "Dumore." Its product was electrically driven by small motors with lamp socket attachment just as were plaintiff's products. It was, of course, for domestic use, just as were many of plaintiff's appliances. Products similar to those of plaintiff are often found in the same stores with electric washing machines. Defendant sold about 400 of its machines up to November, 1927. It is true that the vice president of defendant testifies that he had never heard of the name "Dumore" as a trade-mark before he adopted it but the record sheds no light as to what any other officer or agent of the company knew. If he had never heard of it, it is a strange coincidence, not only that he selected plaintiff's word, but that he made it up from the same words in the same form and misspelled in the same way. It was not essential that plaintiff prove any particular injury or that any purchaser was misled. Bickmore Gall Cure Co. v. Karns, 134 F. 833, 835 (C. C. A. 3). It is sufficient if there was manifest liability to deceive, Ralston Purina Co. v. Western Grain Co., 23 F.(2d) 253, 255 (C. C. A. 5), or, if there was reasonable probability of injury, Peninsular Chem. Co. v. Levinson, supra. That there was such reasonable probability is obvious. Illustrations may be found in Vogue Co. v. Thompson-Hudson Co., supra; Peninsular Chemical Co. v. Levinson, supra, and Wall v. Rolls-Royce, supra.

■ That plaintiff is entitled to relief is clear. The relief granted by the District Court was incidental to the jurisdiction it assumed in determining the validity of the word "Dumore" as a technical trade-mark. We conclude that it should be based upon the theory herein set forth. The District Court enjoined the defendant from the further use of the name "Dumore" as a trade-mark on its washing machines in connection with the corporate name, "the Dumore Company," or any other corporate name or business title which includes the word "Dumore." The effect is to allow defendant to use the word "Dumore" alone. But the word, in substantially the same form, has been so long associated in the trade with plaintiff's goods that there is a likelihood shading almost into certainty that any electrically driven device labeled "Dumore" only

would be regarded as plaintiff's product. To obviate such manifest probability, the defendant may use the word "Dumore" only when accompanied with its present corporate name, Dayton Washer Company. It may not use it otherwise.

Thus modified, the decree is affirmed.