PHILADELPHIA STORAGE BATTERY COMPANY, Plaintiff, *v.* MORRIS MINDLIN, Doing Business under the Trade Names of EMPIRE CUTLERY COMPANY and NORWALK SALES COMPANY, Defendant.

Supreme Court, Special Term, New York County, May 10, 1937.

*White & Case* [*William St. John Tozer, Roger M. Blough* and *William J. Killoran* of counsel], for the plaintiff.

*Samuel J. Ernstoff*, for the defendant.

SHIENTAG, J. Plaintiff, a manufacturer of radio sets, storage batteries and associated products, seeks an injunction *pendente lite* restraining defendant from using its nationally celebrated brand " Philco " in connection with the sale of razor blades. Plaintiff has never manufactured or sold razor blades, and so far as appears from the papers, has no present intention of entering that field of endeavor. Defendant offers no explanation for its adoption of a mark which has been so widely and successfully exploited in other fields by plaintiff. The motion thus presents for determination the interesting question as to whether the use of a famous brand on a non-competing product constitutes an actionable infringement of a common-law trade-mark. Despite the registration of the mark in the United States Patent Office, this court has jurisdiction over the suit. (U. S. Code, tit. 15, § 103; *Kayser & Co.* v. *Italian Silk Underwear Co.*, 160 App. Div. 607.)

The tendency of the courts, at an earlier time, was to confine the protection of a trade-mark to the product on which, and the territory in which, it had been used. This court recently reviewed the precedents relating to the territorial scope of trade-mark protection, and in passing touched upon the cognate problem which is now presented. (*Maison Prunier* v. *Prunier's Restaurant & Cafe, Inc.*, 159 Misc. 551.) It pointed out that " courts generally have come to recognize that actual competition in a product is not essential to relief ·under the doctrine of unfair competition. Whatever may have been the ancient rule, it is now clearly established that the two products need not be competitive." To paraphrase the much-quoted and classic dictum of DENISON, J., the word " unfair " rather than " competition " should be underscored in any judicial definition of unfair competition. (*Vogue Co.* v. *Thompson-Hudson Co.*, 300 Fed. 509, 512. See, also, *Wayne County Produce Co.*, v. *Gordon-O' Neill Co., Inc.*, 249 App. Div. 743.)

But is every commercial use of a mark previously adopted by another necessarily unfair? There is no difficulty in so stigmatizing a use which results in a diversion of the plaintiff's custom and the deception of the public. " The whole Law· and the Prophets on the subject," says LEARNED HAND, J., is " that one merchant shall not divert· customers from another by representing what he sells as emanating from the second." (*Yale Electric Corp.* **v.**

*Robertson*, 26 F. [2d] 972, 973.) But diversion of trade is not the only injury which may be caused by the second use. The normal potential expansion of the plaintiff's business may be forestalled. (*Long's Hat Stores Corp.* v. *Long's Clothes, Inc.*, 224 App. Div. 497; *Forsythe Co., Inc.*, v. *Forsythe Shoe Corp.*, 234 id. 355; modfd., 259 N. Y. 248.) His reputation may be tarnished by the use of his mark upon an inferior product. (Cf. *Ford Motor Co.* v. *Cady Co., Inc.*, 124 Misc. 678, 681; modfd., 216 App. Div. 786; *Eno* v. *Dunn*, L. R., 15 A. C. 252, 258.) A false impression of a trade connection between the parties may be created, possibly subjecting the plaintiff to liability or to the embarrassments of litigation, or causing injury to his credit and financial standing. (Cf. *Peninsular Chemical Co.* v. *Levinson*, 247 Fed. 658; *Akron-Overland Tire Co.* v. *Willys-Overland Co.*, 273 id. 674; *Walter* v. *Ashton*, L. R. [1902] 2 Ch. 282; *Phillips* v. *Governor & Co.*, 79 F. [2d] 971; *Buckspan* v. *Hudson's Bay Co.*, 22 id. 721.)

The second use may generate confusion of source or of identities, without, however, engendering any immediate pecuniary loss to plaintiff. To postpone the granting of relief until actual injury could be proved would be to deprive the equitable remedy of its most valuable trait — the dispensation of preventive justice. Similarly, to condition relief on a demonstration of inferiority of product would be to convert the court into a laboratory for the testing of rival products and claims. (Cf. *White* v. *Mellin*, L. R. [1895] A. C. 154.) The second user is hardly a fit guardian of the good will symbolized by the plaintiff's mark. The court may properly presume that the confusion of source will be injurious and, therefore, wield its injunctive powers with despatch to prevent the infliction of harm. A merchant's " mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is a symbol of its possessor and creator, and another can use it only as a mask." (LEARNED HAND, J., in *Yale Electric Corp.* v. *Robertson, supra*, at p. 974.) Where confusion of source is probable, an injunction should be forthcoming, whether the infringing use is upon a competing or non-competing product. A mark, it has been pointed out, is more than a symbol of existing good will or a mere commercial signature; it has a creative function; it serves as a " silent salesman " to attract custom. The dilution of its selling powers and " the whittling away of its uniqueness " by use on non-competing products constitutes a real injury for which there

should be redress. (Schechter, Rational Basis of Trademark Protection, 40 Harv. L. Rev. 813; Fog and Fiction in Trademark Protection, 36 Col. L. Rev. 60.) It was largely on this theory that DORE, J., in *Tiffany & Co.* v. *Tiffany Productions, Inc.* (147 Misc. 679; affd. by a divided court in 237 App. Div. 801; affd., 262 N. Y. 482) restrained the use of the name Tiffany, at the suit of the well-known jewelers, in connection with the defendant's motion pictures. There was specific evidence of public confusion, but the court, in part at least, rested its decision on the broader ground.

The element of the possibility of confusion at source has been stressed in various decisions. The ambit of protection is constantly being widened. The adoption of " Kodak " for cameras precludes its use on bicycles (*Eastman Photographic Materials Co.* v. *Griffiths Cycle Corp.*, 15 R. P. C. 105); "Rolls-Royce," the name of an automobile, may not be appropriated for radio tubes (*Wall* v. *Rolls-Royce of America*, 4 F. [2d] 333); "Times" as a brand for bicycles may be restrained by the proprietor of a newspaper bearing that name (*Walton* v. *Ashton*, L. R. [1902] 2 Ch. 282); " Waterman " as a mark for razor blades may be interdicted at the suit of the fountain pen company (*Waterman Co.* v. *Gordon*, 72 F. [2d] 272); the use of " Dunhill," the famous brand for smokers' supplies, on shirts constitutes an infringement (*Alfred Dunhill of London, Inc.*, v. *Dunhill Shirt Shop*, 3 F. Supp. 487); the same mark may not be used on liniment and soap (*Omega Oil Co.* v. *Weschler*, 35 Misc. 441; affd., 68 App. Div. 638), automobiles and tires (*Hudson Motor Car Co.* v. *Hudson Tire Co.*, 21 F. [2d] 453), food products and oleomargarine (*Del Monte Special Food Co.* v. *California Packing Corp.*, 34 F. [2d] 774); upon electrical appliances and spark plugs (*Duro Co.* v. *Duro Co.*, 27 F. [2d] 339); upon cooking utensils and wash boilers (*Aluminum Cooking Utensil Co.* v. *Sargoy Bros. & Co.*, 276 Fed. 447); or upon mineral oil and figs (*Standard Oil Co.* v. *California Peach & Fig Growers*, 28 F. [2d] 283). (See, also, *Armour & Co.* v. *Master Tire & Rubber Co.*, 34 F. [2d] 201; *Industrial Rayon Corp.* v. *Dutchess Underwear Corp.*, 17 F. Supp. 783.)

Confusion of source is inevitable in the present case. " Philco " has been widely advertised in various media — newspapers, magazines, billboards, radio programs — and is well known as a brand for radio sets and accessories. It will hardly be contended that defendant was ignorant of this extensive prior use. His adoption of the mark cannot be charged to coincidence. It is obvious that he is seeking to trade upon plaintiff's reputation. It is not material that there has been no direct representation of

trade connection with plaintiff or that the aggravating circumstances present in some of the other cases are absent here. The very use of the brand is sufficient to induce a mistake of identities and, therefore, an injunction should issue. While this decision goes a step beyond the adjudicated cases in this State, it is in line with the modern trend and is in harmony with decisions in the Federal courts on this important branch of the law. (Compare, for example, *Tecla Corp.* v. *Salon Tecla, Ltd.*, 249 N. Y. 157, with *Tiffany & Co.* v. *Tiffany Productions, Inc., supra.*)

" A vast field of words, phrases, and symbols is open to one who wishes to select a trade-mark to distinguish his product from that of another. Unquestionably in our ever-increasing complex business life, the trend of modern judicial decisions in trade-mark matters is to show little patience with the newcomer who in adopting a mark gets into the border-line zone between an open field and one legally appropriated to another. As between a newcomer and one who by honest dealing has won favor with the public, doubts are always resolved against the former." (*Skelly Oil Co.* v. *Powerine Co.*, 86 F. [2d] 752, 754.)

There may be situations in which protection should not be projected beyond the field of the plaintiff's exploitation of his mark. Defendant's use may be entirely too remote to occasion any conceivable injury; the mark may be so nondescript as to render further dilution of its selling power improbable; defendant may have used the mark for many years and developed a good will of his own before any conflict occurs; there may be an honest commercial need for the use of the term by defendant. The law, particularly in this field, is still in a formative stage and its frontiers are yet to be defined.

The fear is sometimes expressed that the extension of protection may foster monopoly, not merely of language but of trade. The fear is groundless. He who coins a trade symbol adds rather than detracts from the language. Even when a term in a dictionary is used in an arbitrary manner, the language is not impoverished. The term may still be used in its accepted sense; what equity prevents is the appropriation of the new layers of meaning that have been added by the plaintiff. The rights of the first user can be sustained to the extent that they do not unduly handicap others in the honest conduct of their business. New competition and enterprise " must not be throttled, but the late comer should be compelled to rely upon his own ingenuity, rather than misrepresentaion and misappropriation for the creation of his market. This much at least is demanded by the most elementary notions

of honesty." (Handler, Unfair Competition, 21 Iowa L. Rev. 175, 186.) Blatant imitation should not be recognized by the judicial condonation of practices which violate the fundamental precepts of fair business dealing.

The motion for an injunction *pendente lite* is granted. Bond is fixed at $250. Settle order.