## OHIO MILLERS' MUT. INS. CO. v. ARTESIA STATE BANK.

### No. 5808.

Circuit Court of Appeals, Fifth Circuit.
April 7, 1930.

Rehearing Denied April 25, 1930.

Ben H. McFarland, of Aberdeen, Miss., Dan E. McGugin and Giles L. Evans, both of Nashville, Tenn. (McFarland & Holmes, of Aberdeen, Miss., on the brief), for appellant.

Kit Williams, of Memphis, Tenn., and Geo. J. Leftwich and C. L. Tubb, both of Aberdeen, Miss., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

This is an appeal from a judgment of the District Court of the United States for the Northern district of Mississippi. Appellant (plaintiff) sued the appellee (defendant) upon a certificate of deposit issued by defendant, and which the plaintiff purchased for its face value and accrued interest. The jury returned a verdict for the defendant, and the judgment appealed from was entered upon it. The defendant asserted that it had been induced by fraudulent representations to purchase certain bonds in return for which it issued the certificate of deposit sued upon. Three issues were presented by the defense of

fraud; whether fraudulent representations were made by the seller of the bonds, whether the plaintiff, the purchaser of the certificate of deposit, had notice of the alleged fraud, and whether the defendant suffered a loss because of the alleged fraud. The first and third issues were submitted to the jury by the District Judge, and the defendant prevailed with the jury. The District Judge in effect instructed the jury that plaintiff had notice, through the knowledge of its president, of any fraud that was perpetrated upon the defendant. The correctness of this instruction is the most important question to be reviewed.

The defendant purchased $5,000 of the bonds of the Integrity Mutual Casualty Company from J. C. Adderly, Inc., an insurance management corporation, of which one J. C. Adderly was president, through A. K. Tigrett, an investment broker of Memphis, Tenn. The J. C. Adderly, Inc., sold the certificate of deposit shortly after it acquired it from the defendant in payment of the bonds to the plaintiff for its face value and accrued interest, and before its maturity. Adderly was president of all three corporations at and before the time of the transaction. They also had the same vice president, secretary-treasurer, and general counsel. The two insurance companies were mutual companies; they had different directors, and different policy holders. One wrote workmen's compensation, and the other casualty insurance. Both had offices together, and their respective insurance businesses were managed by J. C. Adderly, Inc., the management corporation. If a fraud was committed on the defendant in the sale to it of the Integrity Mutual Insurance Company's bonds, Adderly had knowledge of it, as he furnished Tigrett with the literature which contained the representations for the purpose of enabling Tigrett to use it with prospective purchasers of the bonds, and Tigrett did, in fact, submit it to defendant's vice president, who for it purchased the bonds. There was evidence tending to show that false representations as to the status of a fund to secure the bonds were contained in the literature, and that the defendant might suffer a loss thereby. The Integrity bonds sold defendant by J. C. Adderly, Inc., had, with others, been bought by it from the Integrity Company, and Williamson, the vice president of both the Integrity Company and the J. C. Adderly, Inc., solicited Tigrett to take over for re-sale $50,000 of the bonds, which Tigrett did, disposing of $5,000 of them to the defendant. The plaintiff had nothing to do with the sale of the

Integrity bonds to Tigrett or to the defendant, or with any representations made to either by Adderly or his company. The plaintiff first entered the picture on March 20, 1926, the date of its purchase of the certificate of deposit, the bonds having been sold to defendant by Adderly February 22, 1926, which was the date of issue of the certificate of deposit. On October 21, 1925, the board of directors of plaintiff adopted a resolution authorizing its treasurer, J. W. Ott, with the approval of its president, J. C. Adderly, to invest the cash funds of the plaintiff in bonds or other securities or to sell such bonds or securities as the situation might require, such authority to continue until the next annual meeting. Pursuant to this authority, the certificate of deposit was purchased by plaintiff. Ott signed the check of plaintiff which paid Adderly, Inc., for it. Presumably Adderly, as president of plaintiff, approved the purchase. At a meeting of the directors of the plaintiff held on April 14, 1926, at the office of plaintiff in Columbus, Ohio, the treasurer reported certain investments to have been made by him with the approval of the president, and among them the purchase of the defendant's certificate of deposit sued upon. The directors approved the purchase by acquiescence and failure to make objection. Ott denied having any knowledge of any fraud upon defendant in the sale of the bonds to it, and the record does not show any either on his part or upon the part of any other officer or agent of plaintiff, except Adderly. The plaintiff had no connection with the sale of the Integrity bonds either to Tigrett or to the defendant, but only with the subsequent purchase of the certificate of deposit.

■ If notice is charged to plaintiff, it must be through the undoubted knowledge that its president Adderly had of any such fraud at the time he participated in the purchase of the certificate of deposit by the plaintiff from his company, at least to the extent of approving it. Knowledge of an agent is ordinarily notice to his principal. The exceptions to this general rule are twofold. When the interest of the agent is adverse to that of his principal in such a way as that the agent will be presumed to conceal his knowledge from his principal and not to disclose it to him, the rule does not apply. Also, when the knowledge of the agent is not acquired while acting in the course of his employment for his principal, it does not bind the principal. The principal is not chargeable with notice of facts within the knowledge of his agent, when the latter acquired such knowledge while acting as agent for another. The two exceptions are so well settled as not to require citation of authority.

■ Applying them to the facts of this case, Adderly's interest in the transaction of the sale of the certificate of deposit to plaintiff was adverse to it. If he knew his title to the investment was infected by its fraudulent acquisition, it was to his interest to conceal this knowledge from the plaintiff, since disclosing it would defeat a sale of the instrument to plaintiff, which Adderly desired to make for his company. It would be presumed, and the fact was, that he would make no disclosure of the fraudulent acquisition of the instrument by him to the plaintiff, though he was its president, since this would defeat his attempt to sell it to plaintiff. Again, the knowledge that Adderly acquired of the fraud was acquired while he was acting as president of the Adderly Company, which owned and sold the bonds to defendant, and not as president of the plaintiff, which had no connection with or interest in the sale of the bonds. The connection of the plaintiff first began when it subsequently sought to purchase the certificate of deposit from the Adderly Company. At that time the fraud had been already completed, and the knowledge of Adderly already fully acquired. As president of plaintiff, acting for it, he acquired no knowledge of the fraud. The knowledge acquired by him in acting for the Adderly Company alone did not bind the plaintiff.

The defendant contends that there are exceptions to the exceptions which bring this case back to the general rule.

First, that as between two innocent parties, he must suffer who clothed the guilty party with power to commit the fraud. The plaintiff in this case did not clothe Adderly with the power to defraud the defendant. It had nothing to do with the bonds of the Integrity Company, or their sale to Tigrett or to the defendant. It only bought the defendant's certificate of deposit, and in that transaction there was no fraud. It was the Integrity Company and the Adderly Company, either or both, that clothed Adderly with the power to defraud defendant, and not the plaintiff.

Second. Nor did the plaintiff and defendant consent that Adderly should be their mutual agent. The plaintiff had nothing to do with the defendant's purchase of the integrity bonds, the transaction in which the alleged fraud was committed, and Adderly

was not an agent of plaintiff in that transaction. Knowledge of the fraud, then acquired, would not be notice to plaintiff in the subsequent transaction, relating to the purchase of the certificate of deposit, in which Adderly did represent both the buyer and seller of the certificate of deposit. The defendant was not a party to the subsequent transaction, and Adderly was not its agent therein.

Third. Adderly's interest was not balanced between his company and the plaintiff. His endeavor to pass to the plaintiff the certificate of deposit, without disclosing the infirmity of his title to it, is conclusive of where he regarded his interest to lie.

Fourth. Nor was Adderly the sole representative of the plaintiff in acquiring the certificate of deposit for it. His function was limited to approval of Ott's act by the very terms of the resolution of plaintiff's directors. It was Ott who had the authority to make the investment, and it was Ott who did so by signing the check that paid for the certificate. Ott testified that a finance committee also approved the investment, probably in advance, and the minutes of a later meeting of the directors show that Ott reported the investment as having been made by him and approved by Adderly, and the directors approved it by acquiescence in the report. The evidence tended to show that Ott, the finance committee, and the directors, as well as Adderly, represented plaintiff in the acquisition of the certificate.

Fifth. The defendant also relies upon the identity in interest of the three corporations, all of which it asserts were controlled by Adderly, to impute to all three the knowledge of Adderly, regardless of in whose business it was acquired. The officers of the three corporations were the same, and doubtless Adderly was the dominant one. The Adderly Company managed the insurance business of each, and for the doing of this business the two insurance companies had joint offices in Chicago. The corporate headquarters of the plaintiff were at Columbus, Ohio, and there its directors met, and its financing was passed upon. The directors of none of the three companies were the same, except that Adderly was a director in all. The directors are not shown to have been dependent. Being a mutual corporation, the beneficial ownership of the plaintiff company was in its policy holders, and they were entirely different from the beneficiaries in either of the other two companies. The loss suffered from failing to collect the certificate of deposit sued upon will fall upon the policy holders of the plaintiff exclusively, and will not be shared by the policy holders of the Integrity Company, or by the stockholders of the Adderly Company, or by Adderly personally. This is not a case in which a dominant individual, who owns substantially all the beneficial interest, creates numerous corporations and vests in them the legal title to his property, and endeavors to separate ownership among them, though, in reality, it is substantially all his. In such a case, the court will look through the form of the legal entities to the real owners and to the controlling power, and impute his knowledge to all of his corporations.

In this case, the ownership in the three corporations was entirely different. While the insurance features were conducted by the same management corporation, and all the corporations had the same officers, the corporate business and financing were conducted by different and apparently independent directors at different localities, and the ownership in all three corporations was entirely distinct, the dominant person having no beneficial interest in either of the mutual insurance companies.

Our conclusion is that the District Court erred in charging the jury that Adderly's knowledge of the fraud alleged to have been committed upon the defendant by him was notice to the plaintiff of the infirmity in the title of the Adderly Company to the certificate of deposit.

The judgment of the District Court is reversed, and the case remanded for further proceedings in conformity with this opinion, and it is so ordered.

Reversed and remanded.