CARROLL et al. v. DULUTH SUPERIOR MILLING CO.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1916.)

No. 4465.

1. TRADE-MARKS AND TRADE-NAMES ☞33—REQUISITES OF ASSIGNMENT—NECESSITY OF TRANSFER OF BUSINESS.

A trade mark or name cannot be assigned, except in connection with the transfer of the particular business in which it has been used, with its good will, and for continued use upon the same articles or class of articles.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 37; Dec. Dig. ☞33.]

2. TRADE-MARKS AND TRADE-NAMES ☞35—ASSIGNMENT—VALIDITY.

A verbal agreement by the owner of a milling business in which he used a trade-mark, in giving a mortgage on the mill property, that the trade-mark should pass to the mortgagee in aid of the mortgage, did not

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

give the mortgagee title to the trade-mark, where the mill was destroyed by fire, the business discontinued, and the mortgage was never foreclosed.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 39, 40; Dec. Dig. ☞35.]

3. TRADE-MARKS AND TRADE-NAMES ☞68—UNFAIR COMPETITION.

There can be no unfair competition, where there is no competition in fact, as where the parties do not sell their goods in the same territory.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. ☞68.]

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit in equity by Peter F. Carroll and Edwin R. Freeman, partners as Henry Koper & Co., against the Duluth Superior Milling Company. Decree for defendant, and complainants appeal. Affirmed.

John M. Coit, of Washington, D. C., for appellants.

Hjalmar H. Boyesen, of New York City (Sullivan & Cromwell, of New York City, Crassweller, Crassweller & Blu, of Duluth, Minn., and Ralph L. Collett and R. Bernard Crispell, both of New York City, on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. Appellants brought this action to restrain appellee from unlawful competition in business and for damages. The alleged unlawful competition is the use by appellee in the manufacture and sale of flour of a trade-mark known as "Freeman's Superlative," of which appellants claim to be the owners. Appellee admits the use of the trade-mark, but alleges that it is the owner thereof. The question to be decided, therefore, is one of title. The trial court dismissed appellants' bill. The facts which must determine the question involved are substantially as follows:

In 1876 a copartnership composed of A. A. Freeman and his brother, Marcus L. Freeman, acquired a flouring mill in La Crosse, Wis., and entered upon a general flour milling business. A. A. Freeman was the active partner in charge and the originator of "A. A. Freeman & Co., Superlative" trade-mark. Marcus L. Freeman was inactive, and engaged in the furniture business on his own account in New York City. A. A. Freeman was also a member of the firm of Charles Haight & Co., flouring merchants of the same place, the members of the firm being Charles Haight, A. A. Freeman, A. Irving Freeman, and Henry Koper. This firm was a large purchaser of flour from A. A. Freeman & Co. for about 10 years subsequent to 1876. The firm of Charles Haight & Co. during this time had advanced to the firm of A. A. Freeman & Co. the sum of $196,840. On November 5, 1878, the firm of A. A. Freeman & Co. registered the "A. A. Freeman & Co., Superlative" trade-mark as a label in the Patent Office. There is no question but that up to October 7, 1885, the trade-mark was the property of A. A. Freeman & Co. On that

date, however, A. A. Freeman, his wife, and Marcus L. Freeman, executed and delivered to Charles Haight, Henry Koper, and A. Irving Freeman a mortgage embracing the land upon which the mill at La Crosse stood, "together with the flouring mills, elevators, buildings, engine and boiler houses, with all the machinery, fixtures, and appurtenances, and everything in said premises situate, belonging, and appertaining to said mills." This mortgage was given to secure the payment of said sum of $196,840 on or before September 1, 1890. The amount secured by the mortgage was not paid. In June, 1891, the firms of A. A. Freeman & Co. and Charles Haight & Co. failed. It does not appear from the record just what legal form these failures assumed. It does appear, however, that the mortgage was assigned by Charles Haight & Co. to the Phœnix National Bank of New York City, to secure the bank for the indebtedness owing to it by said firm. The mortgage was not recorded until after it was past due, namely, June 4, 1891, and the assignment to the bank was not recorded until February 15, 1892.

Shortly before the failure of A. A. Freeman & Co. and Charles Haight & Co. the mill of A. A. Freeman & Co., at La Crosse, was wholly destroyed by fire. The bank foreclosed the mortgage, and title to the land on which the mill stood was conveyed to the city of La Crosse. It is not claimed by appellants that any right or title to the trade-mark in question passed from A. A. Freeman & Co. to Charles Haight & Co., by virtue of the terms of the mortgage. It is claimed, however, that at the time the mortgage was executed there was a contemporaneous oral understanding and agreement between A. A. Freeman and Charles Haight & Co. that the trade-mark should pass to Charles Haight & Co., together with the good will of A. A. Freeman & Co. Marcus L. Freeman testifies to this fact, and he is corroborated by the testimony of Henry Koper, deceased, given in the proceeding in the United States Patent Office to cancel trade-mark No. 66,288, filed by the Duluth Superior Milling Company. Henry Koper died in 1910, A. Irving Freeman in 1886, Charles Haight in 1891, and A. A. Freeman in March, 1909.

After the execution and delivery of the mortgage Charles Haight & Co. kept a representative at La Crosse to look after their interests. Henry Koper ordered the flour that was shipped to Haight & Co., and the flour was sold by Haight & Co. under the "Freeman Superlative" brand. In June, 1891, when the firms of Charles Haight & Co. and A. A. Freeman & Co. failed, Henry Koper, assuming to be the surviving member of the firm of Charles Haight & Co., connected himself with the firm of Grinnell, Minturn & Co., merchants and exporters in New York City, and became manager of their flour department, and sold flour under the brand in question. M. L. Freeman continued his furniture business in New York City, while A. A. Freeman endeavored to enlist capital for the building of another mill. The testimony on the part of appellants shows that when Koper went with Grinnell, Minturn & Co., he arranged with the Consolidated Milling Company, of Minneapolis, Minn., to manufacture for him a high grade of flour, and thereafter he made his

purchases of this flour from the Consolidated Milling Company, to whom he sent his stencil or brand "Freeman's Superlative," and on Mr. Koper's instructions the Consolidated Milling Company branded the flour "Freeman's Superlative" and shipped the same to Mr. Koper or his customers, as he instructed them to do. This arrangement lasted for a few months, when Mr. Koper arranged with Mr. A. Ruyter and Mr. H. Wehmann, both of whom composed the firm of H. Wehmann & Co., to act as his broker in Minneapolis for the purchase of flour. Thereafter H. Wehmann & Co. bought large quantities of flour from the Minneapolis Flouring Mills Company for account of Mr. Koper, and he sent to that mill his stencil "Freeman's Superlative." On his instructions they branded the flour and shipped it to Henry Koper or his customers as Henry Koper directed them to do. About 1892 there was a new mill erected at West Superior, Wis., and Mr. A. A. Freeman, of the former firm of A. A. Freeman & Co., of La Crosse, Wis., having secured the position of manager of that mill, the mill was called the Freeman Milling Company.

About this time Koper induced the firm of Grinnell, Minturn & Co. to become heavy stockholders in the Freeman Milling Company, and for that reason he transferred his brands and trademark from the mills in Minneapolis to the Freeman Milling Company at West Superior. Among these brands which he transferred to them was this brand "Freeman's Superlative," and thereafter the Freeman Milling Company branded the flour "Freeman's Superlative," and shipped it to Mr. Koper and his customers as they were directed by Mr. Koper. Koper continued to favor this mill with his trade from the fall of 1892, or early in 1893, until 1899, when the Freeman Milling Company became a part of what was at that time known as the United States Flour Milling Company. Koper continued to trade with the United States Flour Milling Company, as he had with the Freeman Milling Company. About a year later the United States Flour Milling Company went into the hands of a receiver, and was later reorganized as the Standard Milling Company, and the different mills at West Superior and Duluth were grouped together as a subsidiary company, and known as the Duluth Superior Milling Company, the appellee in this case.

Koper continued to make his purchases from the Duluth Superior Milling Company, and it branded the flour on his instructions with his brand "Freeman's Superlative," and shipped the same as directed by Mr. Koper. On December 31, 1902, the firm of Grinnell, Minturn & Co. retired from business, and on the 1st of January, 1903, the firm of Henry Koper & Co. was formed, consisting of Henry Koper, Peter F. Carroll, and Edwin R. Freeman. This firm continued the flour business of Grinnell, Minturn & Co. and purchased their flour of the Duluth Superior Milling Company, who, on instructions from Henry Koper & Co. branded their different purchases with their "Freeman's Superlative" brand, and shipped the same to Henry Koper & Co. or their customers as directed by Koper & Co. and were so doing at the time the testimony in this

case was taken. After the death of Koper in 1910 appellants continued the business as Henry Koper & Co.

The parties to this action agree as to the ownership of the brand "Freeman's Superlative" up to the time the mortgage was given by A. A. Freeman & Co. to Charles Haight & Co. Appellee traces its title to the trade-mark in question by evidence which shows that after the burning of the mill of A. A. Freeman & Co. at La Crosse, Wis., in 1890, A. A. Freeman sought capital with which to build another mill. The residents of the city of West Superior, Wis., were anxious to establish industries at that point, and one Edgar A. LeClair, with certain associates, joined with A. A. Freeman in forming a corporation for the purpose of erecting and operating a flour mill in said city of West Superior. In June, 1891, the Freeman Milling Company was incorporated under the laws of the state of Wisconsin, and in June, 1892, the mill commenced producing flour. A. A. Freeman, who had co-operated in the organization of the corporation which bore his name, became general manager of the mill.

Grinnell, Minturn & Co., who had been induced by Koper to subscribe to $25,000 par value of the capital stock of the corporation immediately became large buyers of flour from the Freeman Milling Company, branded "A. A. Freeman Company, Superlative," being later changed to "Freeman Milling Company, Superlative," and continued to buy such flour from the Freeman Milling Company and its successors until the firm went out of business on December 31, 1902. About the time of the organization of the Freeman Milling Company, the trade-marks which had been in use in the mill of A. A. Freeman & Co. at La Crosse, Wis., together with the good will of the business in connection with which they had been used, were assigned by A. A. Freeman, through one C. E. Billquist, who seems to have been a member of Grinnell, Minturn & Co., to the Freeman Milling Company; the roundabout transfer having been made on advice of counsel in order to avoid the possibility of litigation with Freeman's creditors. Billquist was also a director in the Freeman Milling Company. Fifteen thousand dollars par value of the stock of the Freeman Milling Company was assigned and delivered to A. A. Freeman's nominee in consideration of the assignment of the trade-marks and good will.

Without stating in detail the particular transactions, it may be said that whatever title the Freeman Milling Company obtained to the trade-mark in question was transferred and became vested in the appellee, the Duluth Superior Milling Company. It appears without dispute from the evidence that the territory in which Henry Koper & Co. sells "Freeman's Superlative" flour, is the metropolitan district of New York, New Jersey, Philadelphia, Baltimore, Washington, and up the Hudson to Albany, and there is no evidence that appellee ever sold any flour under the brand "Freeman's Superlative" in that territory. The claim of the appellee is that it owns the brand "Freeman's Superlative," and that Henry Koper & Co. and the firms to which it has shipped flour were its agents in selling flour on commission.

On October 29, 1906, the Duluth Superior Milling Company, ap-

pellee, filed for registration the trade-mark in question in the United States Patent Office, and the same was duly registered November 19, 1907. On August 20, 1909, Henry Koper filed with the Commissioner of Patents an application to cancel the same. Issue was joined upon the petition for cancellation, and subsequently the examiner of interferences on August 20, 1910, rendered a decision sustaining the same. The Duluth Superior Milling Company appealed from this decision to the Commissioner of Patents, who on December 6, 1910, affirmed the decision of the examiner. The Duluth Superior Milling Company then appealed to the Court of Appeals of the District of Columbia. The Court of Appeals affirmed the decision of the examiner and commissioner upon the following ground:

"No good purpose would be subserved by a review of the evidence, and we therefore, content ourselves with the finding that appellant was not under the evidence in this case the sole and exclusive user during the ten years necessary to entitle it to such registration, of the mark whose registration it procured."

The application to register the trade-mark was made under the fourth proviso of section 5 of the Trade-Mark Act of February 20, 1905 (33 Stat. 725, c. 592 [Comp. St. 1913, § 9490]); said application showing the exclusive use of the trade-mark by the Duluth Superior Milling Company for the 10 years next preceding the date of said act. We do not think the decision of the Court of Appeals on the application to cancel the trade-mark is decisive of the question involved in the present proceeding. It appeared in the proceedings on that application that, during the 10 years prior to the date of the Trade-Mark Act of 1905, Henry Koper and other firms had used the same trade-mark; therefore the Duluth Superior Milling Company was not entitled to have it registered as its trade-mark under that act. The question of title does not seem to have been adjudicated.

[1] We are now from the foregoing facts to determine whether or not the appellants are the owners of the trade-mark in question. The burden of proof is upon them. Assuming that there was an oral agreement at the time the mortgage was given in 1885 by A. A. Freeman & Co. to Charles Haight & Co. that the good will and trade-marks which were used in connection with the business of A. A. Freeman & Co. in the manufacture and sale of flour at La Crosse, Wis., should pass to Charles Haight & Co., concerning which we have very grave doubts, what became of the trade-mark thereafter? Charles Haight & Co. did not purchase outright the business of A. A. Freeman & Co., and it is well known that a trade-mark or name cannot be assigned, except in connection with the assignment of the particular business in which it has been used, with its good will, and for continued use upon the same articles or class of articles. An attempted assignment of a naked trade-mark, disconnected from any business or good will, is void. Crossman v. Griggs, 186 Mass. 275, 71 N. E. 560; Falk v. American West Indies Co., 180 N. Y. 445, 73 N. E. 239, 1 L. R. A. (N. S.) 704, 105 Am. St. Rep. 778, 2 Ann. Cas. 216; Lea v. New Home Sewing Machine Co. (C. C.) 139 Fed. 732; Bulte v. Igleheart, 137 Fed. 492, 70 C. C. A. 76. In Paul on Trade-Marks, par. 97, p. 162, it is said:

"Trade-marks may also be acquired by purchase or inheritance; but as a trade-mark cannot exist by itself, it follows that it can be acquired, other than by original appropriation, only as appurtenant to an established business, or the good will thereof, and it can be held by the transferee, the same as by an original proprietor, only so long as its use is continued, upon or in connection with an article of the character or species to which it was originally attached."

Again, at paragraph 117, p. 228, it is further said:

"As a mere abstract right, having no reference to any particular person or property, a trade-mark cannot pass by assignment or descend to a man's legal representatives. The reason for this is that, as an abstract right, apart from the business in which it is used, a trade-mark has no existence."

[2] We must assume that, if the good will and trade-mark was transferred by oral agreement as alleged, it was transferred to Charles Haight & Co. in order that the mill might be operated in their interests for the purpose of recovering the amount of their debt against A. A. Freeman & Co.; in other words, that it was in aid of the mortgage. This state of the case would not give Charles Haight & Co. any authority, when the business itself of A. A. Freeman & Co. was destroyed in 1890, to appropriate the trade-mark of A. A. Freeman & Co.; but, assuming for the sake of argument there was such authority, we cannot see how, when Charles Haight & Co. failed, and left as surviving partners A. A. Freeman and Henry Koper, Koper, as against the claims of Freeman, could appropriate the trade-mark as his own. Charles Haight & Co. or Koper never foreclosed the mortgage. Koper was not a member of A. A. Freeman & Co., and all that may be said in favor of Koper being the owner of the trade-mark is that he used it in the sale of flour.

When A. A. Freeman & Co. were manufacturing flour he used it. When Charles Haight & Co. were operating the mill at La Crosse he used it. When he was in the employ of Grinnell, Minturn & Co., and when he was one of the members of the firm of Henry Koper & Co., he used it. But we cannot find from the evidence that Koper ever obtained a valid title to the trade-mark from A. A. Freeman & Co. or Charles Haight & Co. in view of the fact that he was not a member of the firm of A. A. Freeman & Co., and A. A. Freeman was a member of the firm of Charles Haight & Co. We are of the opinion that appellants have not met the burden of proof which rests upon them as to their title to the trade-mark in question, and we have so much doubt about that title that we are of the opinion that no injunction should issue restraining appellee from its use. We are further convinced that we ought not to issue an injunction, for the reason that there is no evidence in the record whatever that the Duluth Superior Milling Company, appellee, ever competed in any way in the sale of flour bearing the trade-mark in question, in the territory in which appellants sell.

[3] This is a case of unfair competition, and not for the infringement of a technical trade-mark, and, if there is no competition, there can be no unfair competition. Borden Ice Cream Co. v. Borden Condensed Milk Co., 201 Fed. 510, 121 C. C. A. 200; Corning Glass Works v. Corning Cut Glass Co., 197 N. Y. 173, 90 N. E. 449; Apollo

Bros. v. Perkins, 207 Fed. 530, 125 C. C. A. 192; Investor Publishing Co. v. Dobinson (C. C.) 82 Fed. 56; Forney v. Engineering News Publishing Co., 57 Hun, 588, 10 N. Y. Supp. 814; Hanover Star Milling Co. v. Allen, 208 Fed. 513, 125 C. C. A. 515, affirmed by Supreme Court March 6, 1916; Simplex Automobile Co. v. Kahnweiler, 162 App. Div. 480, 147 N. Y. Supp. 617; Astor v. West 82d Street Realty Company, 167 App. Div. 273, 152 N. Y. Supp 631; Sartor v. Schaden, 125 Iowa, 697, 101 N. W. 511.

The judgment of the trial court is affirmed.