## MAGNETIC MFG. CO. et al. v. DINGS MAGNETIC SEPARATOR CO.

(Circuit Court of Appeals, Seventh Circuit. December 16, 1926. Rehearing Denied January 18, 1927.)

No. 3700.

1. **Master and servant ⬤⟹62—Contract, to entitle master to inventions of employee, need not be written, nor contain formal words of agreement.**

To entitle master to inventions of employee, employment contract need not be in writing, and no formal words of agreement are necessary, but it is sufficient that minds of parties meet.

2. **Master and servant ⬤⟹62—Under contract requiring employee to devote part time to improvement of device, patent procured by him belongs to employer.**

Under employment contract requiring employee to devote part of his time to development of new or improved device, patent for improvements on such device, procured by employee, belonged to employer.

3. **Master and servant ⬤⟹62—Finding of contract contemplating development by employee of new or improved device held warranted.**

That employee on two prior occasions promptly and voluntarily assigned to employer applications for patents for improvements on device marketed by employer *held* to sustain finding that employment was for purpose of producing new or improved device.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit by the Dings Magnetic Separator Company against the Magnetic Manufacturing Company and another. Decree for plaintiff, and defendants appeal. Affirmed.

John F. Robb, of Cleveland, Ohio, and S. L. Wheeler, of Milwaukee, Wis., for appellants.

Geo. L. Wilkinson, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This suit was brought to compel appellants to assign to appellee a certain patent, No. 1,369,-516, covering a "magnetic separator," to enjoin the further infringement of its claims, and to account for the profits accruing as a result of past infringements. Appellants, holding the legal title, dispute appellee's equitable ownership of the patent in suit, and in turn ask for an injunction to prevent appellee from further infringing. Infringement is admitted; validity is not denied. The narrow question presented is one of title to the patent.

The solution of this question narrows down to an issue of fact, viz. the exact character of the employment of one Bethke, the inventor, at the time the invention was conceived and produced. Counsel seemingly agree that the decision in Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033, governs the disposition of this case. They cannot agree, however, either upon the facts in that case, or upon the exact holding of the Peck Case. The attorneys who appeared on opposite sides in the Supreme Court in that case are opposed to each other here, and they are in total disagreement as to the facts and law announced in the Peck Case. It is needless to add that they entertain different views (both as to fact and law) in the instant case.

Differences will be narrowed, if this court first ascertains the facts in the instant suit. The views of the District Judge, who heard and saw the witnesses, therefore, become of interest and are illuminating. We quote therefrom:

"It may be helpful to the parties, so far as counsel's discussion is concerned, if I indicate some impressions that I have upon the evidence here that deals with matters of fact. The defendant Bethke entered the employ of the plaintiff company on June 1, 1917, and remained in its employ until on or about May 15, 1918. He * * * did not get from it, nor did he give to it, anything like a formal contract to evidence his obligations. * * * It appears pretty clearly, however, that, whatever formal words may or may not have been spoken at that time definitive of the character of his work, he at once entered upon and continued throughout his entire carer as an employee of the plaintiff in the prosecution of certain work along entirely well defined lines; that, while the defendant Bethke may not come within any attempted strict definition of mechanical engineer, a great deal of his time was devoted to doing work such as those who call themselves mechanical engineers do; that is to say, the solution of problems which are clearly mechanical engineering problems. * * *

"The court is required to ascertain, if it can, from the evidence, what the parties by their conduct subsequently showed to be their conceptions of the plaintiff's obligations, of the defendant Bethke's obligations, their duties, to the end that we may find, not only the scope of the contract, the scope of the relationship, but, what is material here, to ascertain what we might call the scope of the interdictions. * * * From what was subsequently done, the obligations of the defendant Bethke are clearly shown, so it seems to me; either as a matter of implication or as a matter of clear inference, they included the defendant Bethke's doing the very things which he said here were done, of a professional or semiprofessional mechanical engineering nature, in the interest of the plaintiff's business, * * * in putting mechanical appliances upon the market. The proof, in my judgment, is overwhelming that the defendant Bethke himself regarded that as his position; that these things were expected of him as a matter of obligation, and not mere volition, entirely within his control to give or to withhold. He places that conception upon his own position. * * *

"I haven't any doubt at all, upon this testimony, that whatever the defendant Bethke did in the way of developing the subject-matter of this patent, or any part of it that is here in question, he did during the term of his employment; that at the time he was obligated by the terms of his contract to give the plaintiff company the benefit of what he did, and that he withheld it from the plaintiff until the commencement of this suit; not only withheld it, but withheld it in conjunction with his associates, left the plaintiff's employ, and conferred upon the defendant Magnetic Company here the benefits of his endeavors. * * * Now, the only question upon which I care to hear any suggestion is what is the law applicable to the facts as I have intimated I shall find them."

Appellants insist the District Judge missed the determinative point in the case, and did not make findings that would bring the case within the holdings of the Peck Case, but

erroneously construed the decision in that case; in short, appellants assert the findings are lacking in specificity. Appellee, on the other hand, insists that the facts and findings in the instant case are both squarely within the decision in the Peck Case.

Whatever merit there may be in the contention that this rule will defeat the very purpose of the patent laws, destroy all incentive for an employee to produce new and useful things (for a clear and forceful presentation of these views, see Judge Denison's opinion Peck v. Standard Parts Co. [C. C. A.] 282 F. 443), it must be admitted that our duty, as was Judge Geiger's, is to apply the Peck decision to the facts presented by this record, rather than indulge in a consideration of questions more economical and legislative than legal in character. If the decision in the Peck Case is to be modified or restricted, it must be done by Congress, or by the court from which it emanated.

Was appellee's employment of Bethke an employment having for its purpose the production of new or improved magnetic separators? Appellants state the question thus:

"Necessarily the crucial point of this case revolves about the relations between an employer and employee concerning an invention; and, second, the existence or nonexistence of an express contract or agreement between an employee and his employer having for its purpose the devising of a specific thing."

[1] The court accepts this statement of the question involved. It is true Bethke's employment called for services as a draftsman or engineer, purchasing agent, timekeeper, and trouble man. It also called for services whereby Bethke was for a consideration to devote a part of his time to the development of a new or improved magnetic separator. No formal words of agreement were necessary; nor, under the laws as they exist today, need the contract for employment have been in writing. If the minds of the parties met, and both understood that the employee, for part of his compensation, was to devote part or all of his time and use his knowledge and skill in making a new magnetic separator, or developing an improvement in the one appellee was marketing, the case falls within the Peck decision.

[2] We observe no justifiable distinction between two contracts, one of which, for an express compensation, obligates the employee to devote his entire time to improving a given machine, and one which, for a consideration, requires the employee to devote a part of his time to improving such machine. The obligation or undertaking for compensation to improve the machine, or build a new one, is present in each contract, and determines, under the Peck decision, the employer's right to the patent, provided the improvement evidences patentable novelty.

[3] As to whether Bethke agreed to devote any part of his time for the compensation paid him (rather small, it must be admitted) to improving the magnetic separator is the decisive and, we may add, close question in this case. It might well be resolved in appellant's favor, but for the construction which Bethke placed upon his own contract. During his employment, and prior to the invention of the article covered by the patent in suit, Bethke made two other inventions on magnetic separators, to cover which he made two applications for patents. In both instances he promptly, voluntarily, and unhesitatingly assigned the applications to appellee.

But in the third instance, the present case, he was apparently convinced that he had made a much more valuable improvement in magnetic separators, and did not disclose his application for a patent to his employer. Instead, he severed his connection with the company. Shortly thereafter, he and two other employees of appellee company became directors of a competitor, and thereupon he assigned his application for a patent to this competitor.

This action on the part of Bethke speaks louder than the testimony of any witness in the case. It is inconceivable that he would have thus transferred his applications for the patents, if he had not construed his contract of employment to be as appellee's president testified. Such a contemporaneous construction of the contract by Bethke's own action, at a time when there was no occasion to dissimulate, is most persuasive. Certainly, in face of it, we are not justified in disturbing the findings of the District Judge, who saw and heard the witnesses, and who tried the entire case with the single purpose in mind of ascertaining the exact contract relation existing between Bethke and his employer.

The judgment is affirmed.