## DINWIDDIE et al. v. ST. LOUIS & O'FALLON COAL CO.

### No. 3341.

Circuit Court of Appeals, Fourth Circuit.

April 4, 1933.

Edward J. O'Mara, of Jersey City, N. J., and Edgar Allan Poe, of Baltimore, Md. (Thomas G. Haight, of Jersey City, N. J., Francis R. Stout, of St. Louis, Mo., and Arthur G. Logan, of Wilmington, Del., on the brief), for appellants.

Forrest Bramble and Randolph Barton, Jr., both of Baltimore, Md. (Barton, Wilmer, Ambler & Barton, of Baltimore, Md., and

Allen C. Orrick, of St. Louis, Mo., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a suit in equity brought in the District Court of the United States for the District of Maryland, to determine plaintiff's right to certain inventions made by Cuno and Bashioum, two of the appellants. There were four suits originally brought, one in the District of Maryland, against the appellant Dinwiddie; one in Missouri, against appellant Cuno; another in Pittsburgh, against appellant Bashioum; and the fourth in Delaware, against the appellant Bashioum Producer Retort Company, a corporation. By agreement Cuno, Bashioum, and the Bashioum Company appeared in this case and an amended bill was filed against all four of the appellants who will be hereinafter referred to as defendants. The appellee, who was plaintiff below will be herein referred to as plaintiff. The temporary injunction that had been issued in this case against defendant Dinwiddie was extended to cover all the defendants.

Evidence was taken before the judge below who heard the witnesses, mostly in person, and in an able and exhaustive opinion found for the plaintiff and entered a decree vesting the plaintiff with the full and complete equitable title to the patents in question and granting the plaintiff the permanent injunctive and other supplementary relief as prayed for. 53 F.(2d) 655, 662. From this action of the court below this appeal was brought.

The plaintiff was one of the companies affiliated with the Busch Interests of St. Louis, Mo., and in the year 1928, entered into two agreements with one Ludwig Kern, a German chemist, and his two sons relating to the Kern processes for the production of various materials and by-products by low-temperature distillation of coal. The plaintiff coal company owned a large tract of coal and the agreements were made with the Kerns for the purpose of developing plaintiff's coal and by-products thereof, under the process of low distillation which they (the Kerns) had invented and which had been developed prior thereto, to a greater or lesser degree, in Great Britain and Germany. Under these two agreements certain sums were paid the Kerns who were to receive a certain percentage of the voting stock of any company formed to handle any inventions

growing out of the researches conducted. All inventions were to be the property of plaintiff. Defendant Dinwiddie had been employed by the Busch Interests in various capacities upon a salary, and was asked to report upon the feasibility of making the Kerns' connection; and it was upon his favorable report that the agreements were entered into. Dinwiddie's salary was a liberal one and he was paid certain bonuses conditioned upon the success of his activities. After the Kerns' agreements were entered into, because of the fact that while they were chemists, possessing a high order of ability, they did not possess the mechanical manipulative knowledge essential in demonstrating practical theories, and upon his recommendation Dinwiddie was authorized to associate with him in the work of developing the Kerns' processes the defendant Dr. Charles W. Cuno, of St. Louis, and later defendant Dr. Harrison Bashioum, of Pittsburgh. Dr. Cuno was an engineer of the Industrial Bureau of St. Louis, and Dr. Bashioum was a chemical engineer of an extended experience and head of the Chemical Engineering Department of the University of Pittsburgh. Dinwiddie during the period here in controversy was paid in salary and expenses more than $17,000. Dr. Cuno was first paid on a per diem basis of $50 a day, later, $300 a month and his expenses and he received during the same time over $7,000. Bashioum was paid on a fee basis which aggregated for the time in question, more than $5,000. The total expenditures made by the plaintiff in prosecuting this work were approximately $85,000 up to the time defendants severed their connections with the plaintiff.

Various experiments were carried on in St. Louis, and in Pittsburgh, all being conducted, apparently, in working out the Kerns' processes; and it was believed by the defendants Dinwiddie, Cuno, and Bashioum that certain discoveries of great commercial value had been made and patents were applied for in the name of the three defendants, Dinwiddie, Cuno, and Bashioum. Four patents were applied for: No. 423,702, relating to coal products and the manufacture thereof, 423,703, relating to the formation and treatment of plastic materials and the products thereof, 444,344, relating to ceramic products and the manufacture thereof, and 441,232, relating to a method of, and apparatus for, distilling coal products.

On or about May 6, 1930, defendants Dinwiddie, Cuno, and Bashioum, with one J. William Davis, organized a Missouri cor-

poration known as the "B.C.D. Corporation," and the three defendants assigned their rights under their patent applications to this corporation. Later the B.C.D. Corporation, which had been joined as a party to the suit against Cuno in Missouri, assigned said rights to the defendant Bashioum Producer Retort Company. Dinwiddie afterwards filed a disclaimer as to any rights he might have in the patent applications as patentee, but had an interest in the Bashioum Corporation. On April 11, 1930, Dinwiddie, Cuno, and Bashioum appeared before a committee representing the Busch Interests in St. Louis, and made a general report on their work up to that time. This report was made in the name of Dinwiddie, but Cuno and Bashioum were both present when it was made and when the matter was generally discussed with the committee representing the plaintiff. The three defendants had full knowledge of the Kerns' agreement and their (the Kerns) interest in any discovery made. The application for the patents in question was made by the patent attorney representing the plaintiff and the expenses of the applications were borne by the plaintiff.

In April, 1930, it developed for the first time, so far as representatives of the plaintiff knew, that the defendants claimed any right in these patent applications as their own individual property. At a conference on April 26, 1930, at which Dinwiddie, Cuno, and Bashioum were all present, the three defendants were at once informed by the committee representing the plaintiff that their rights could not be recognized as they had made the discoveries involved in the patents while in the employ of the plaintiff, engaged for that particular work. Here a conflict arises in the testimony, members of the committee testifying that all three of the defendants agreed to waive any claim as a matter of right and rely upon the generosity of the plaintiff for anything that they might get. This is denied more or less directly by the three defendants. Shortly after, upon learning of the formation of the Bashioum Company and the assignment to it of the rights of the three defendants, plaintiff brought these actions.

In view of the very able and exhaustive opinion of the judge below, in which there is a complete analysis of the evidence, it is not necessary, here, to enter into an extended discussion of that phase of the case. Giving to the finding of the trial judge that weight to which it is entitled, owing to the fact that he heard the witnesses in person, we are of the opinion that he reached the right conclusion. The conduct of the three defendants, Dinwiddie, Cuno, and Bashioum, throughout the entire transaction leads to the conclusion that they only conceived the idea of making their claim after they became convinced that the discoveries would be of great commercial value. Numerous reports were made by them, or concurred in by them, through the period involved; they knew of the Kerns' agreements and the interest the Kerns had in any discoveries made; at various times they reported on the progress they had made not only as to the results of the chemical experiments, as incorporated in the Cuno patents, but Bashioum reported on the retort showing the committee a diagram of it with blueprints; as late as April 11, 1930, they recommended to the committee the construction of a plant to make use of the patents; and they allowed the plaintiff to bear all expenses, including money paid to them for their services, in the course of the work, and in the application for the patents. It is scarcely conceivable that they would have done this had they, at the time, regarded the patents as their own property. The action of the three defendants at the conference in St. Louis, on April 26, 1930, as found by the judge below, sustains the contentions of the plaintiff in respect to the relationship existing. In addition to all this the correspondence and reports filed thoroughly sustain the theory of the judge below. The contention of Cuno and Bashioum that they relied upon promises made to them, by Dinwiddie, as to their rights to the patents in question, is not sound. They knew all about Dinwiddie's employment by the plaintiff and his connection with the work being done to develop the Kerns' processes and consequently must have known that any agreement that he might make, bottomed on their ownership of the patents, would be violative of his confidential relationship with the plaintiff. In other words they must have known that Dinwiddie could not in good faith make them any such promises as they claimed to have relied upon. An agent cannot act adversely to his principle under such circumstances. City of Findlay v. Pertz (C. C. A.) 66 F. 427, 29 L. R. A. 188; Ohio Millers' Mutual Insurance Company v. Artesia State Bank (C. C. A.) 39 F.(2d) 400; Cooper v. Gilbert (C. C. A.) 40 F.(2d) 260; Clifton v. Tomb (C. C. A.) 21 F.(2d) 893; Thomson-Houston

Elec. Co. v. Capitol Electric Co. (C. C. A.) 65 F. 341.

The principles of law controlling here are well settled. As was said by the judge below:

"First, an invention made incidentally by an employee in the course of his regular or general employment, and at his employer's expense, is the property of the employee, unless he has agreed, either expressly or impliedly by virtue of some special terms of his employment, to transfer ownership to his employer; and, unless he has done so, the employer is at most entitled to a nonexclusive, nontransferable shop right, or irrevocable license to use the invention. Hapgood v. Hewitt, 119 U. S. 226, 7 S. Ct. 193, 30 L. Ed. 369; Solomons v. U. S., 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667; Dalzell v. Dueber Watch-Case Mfg. Co., 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749; Gill v. U. S., 160 U. S. 426, 16 S. Ct. 322, 40 L. Ed. 480; Pressed Steel Car Co. v. Hansen (C. C. A.) 137 F. 403, 2 L. R. A. (N. S.) 1172.

"Second, if, however, the employee is engaged to devise or to perfect a particular article or process, all discoveries made by him in connection therewith belong to the employer, since in making such discoveries the employee is merely doing what he was hired to do. Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033; Houghton v. U. S. (C. C. A.) 23 F.(2d) 386; Wireless Specialty Apparatus Co. v. Mica Condenser Co., Ltd., 239 Mass. 158, 131 N. E. 307, 16 A. L. R. 1170."

In Houghton v. U. S., supra, will be found an able discussion by Judge Parker, of this court, of these principles and an exhaustive analysis of the authorities.

In Standard Parts Co. v. Peck, supra, the Supreme Court said: "By the contract Peck engaged to 'devote his time to the development of a process and machinery,' and was to receive therefor a stated compensation. Whose property was the 'process and machinery' to be when developed? The answer would seem to be inevitable and resistless—of him who engaged the services and paid for them, they being his inducement and compensation, they being not for temporary use, but perpetual use, a provision for a business, a facility in it, and an asset of it, therefore contributing to it whether retained or sold—the vendee (in this case the Standard Company) paying for it and getting the rights the vendor had (in this case the Axle Company)."

In Solomons v. United States, supra, Mr. Justice Brewer said: "If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had, in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer."

See, also, Goodyear Co. v. Miller (C. C. A.) 22 F.(2d) 353; Wireless Specialty Apparatus Co. v. Mica Condenser Co., Ltd., et al., 239 Mass. 158, 131 N. E. 307, 16 A. L. R. 1170; Air Reduction Co., Inc., v. Walker, 118 Misc. 827, 195 N. Y. S. 120; 39 Corpus Juris, page 130, § 169.

The relationship existing between the three defendants and the plaintiff was one that demanded of the defendants the utmost good faith with respect to the work for which they were employed and they could acquire no rights to the patents in question. The Bashioum Company, having acquired all the rights it claimed by assignments from the other three defendants, could have no better title than the assignors themselves held.

We are in full accord with the reasoning and the conclusions reached by the learned judge below, and the decree is accordingly affirmed.