[Civ. No. 16331.   Second Dist., Div. Two.   June 23, 1948.]

H. B. SCUTT, Respondent, v. F. O. BASSETT, Appellant.

374

Ernest A. Tolin, W. Claude Fields, Jr., and Paul A. Mason for Appellant.

Newby, Holder & Newby and Dee Holder for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after a trial before the court without a jury in an action for damages (a) for conversion, (b) for unfair competition, and (c) to enjoin defendant from making automobile cranes or engine stands which are of the same construction as those heretofore manufactured under a contract by defendant for plaintiff, defendant appeals.

The evidence being viewed in the light most favorable to plaintiff (respondent), the essential facts are these:

Prior to March, 1945, plaintiff was a salesman for the Stuart Manufacturing Company, a manufacturer of automobile cranes. In the month just mentioned, plaintiff entered into a contract with defendant whereby defendant, who was the owner of a welding and iron working shop, agreed to build 13 automobile cranes similar to a Stuart crane. For this experimental work, defendant was paid the sum of $1,000. On September 1, 1945, plaintiff and defendant entered into a further contract by the terms of which defendant agreed to build 100 additional cranes for plaintiff at a cost of $60 each. By May 6, 1946, defendant had constructed 88 of these cranes and delivered 83 of them to plaintiff. About May 6, 1946, plaintiff and defendant had a dispute and defendant ordered

plaintiff to leave his premises, which plaintiff had been using as his business headquarters. Plaintiff complied with defendant's request but left no forwarding address. He made no request or demand for delivery of the five additional cranes which had been completed, nor did he offer payment for them.

Plaintiff filed an application for a patent upon the cranes and in July, 1946, notified defendant of the fact that he had made such application.

In July, 1946, defendant sold the five cranes and some engine stands which he had constructed under his contract with plaintiff. In addition, defendant manufactured 75 more cranes and sold them to former customers of plaintiff. The cranes and stands thus manufactured were of the same design as those manufactured by defendant under his contract with plaintiff.

Plaintiff instituted the present suit predicated upon two causes of action; first, for conversion based upon defendant's selling five of the 88 cranes which he had manufactured for plaintiff under their contract; second, based upon unfair competition in that defendant had manufactured some 75 cranes and certain stands and sold them to plaintiff's former customers, which were of the same design as those manufactured by defendant for plaintiff under their contract.

### Questions Presented for Determination

First: *Did the evidence sustain the trial court's finding that defendant had converted personal property belonging to plaintiff?*

■ This question must be answered in the negative and is controlled by this pertinent rule of law: In an action for conversion, plaintiff must prove either (1) ownership with the right of possession, or (2) actual possession of the article claimed to have been converted at the time of the alleged conversion. (*Middlesworth* v. *Sedgwick*, 10 Cal. 392, 393; *National Lumber Co.* v. *Tejunga Valley Rock Co.*, 22 Cal.App. 726, 730 [136 P. 508]; *McCoy* v. *Northwestern C. & S. Co.*, 3 Cal.App.2d 534, 537 [39 P.2d 864].)

■ In the instant case the uncontradicted evidence disclosed that plaintiff did not have either ownership with the right to possession or the actual possession of the machines alleged to have been converted by defendant. Therefore, applying the foregoing rule, plaintiff failed to establish a cause of action for conversion.

Second: *Did plaintiff establish a cause of action for unfair competition?*

■ This question must likewise be answered in the negative and is governed by this pertinent rule: To constitute unfair competition with respect to commodities or between persons there must be actual competition, and that cannot exist in the absence of some competing commodity or persons. (*Raladam Co. v. Federal Trade Com.*, 42 F.2d 430, 436; *Carroll v. Duluth Superior Milling Co.*, 232 F. 675, 681 [146 C.C.A. 601]. See, also, *Federal Trade Com. v. Raladam Co.*, 283 U.S. 643, 647 [51 S.Ct. 587, 75 L.Ed. 1324], and cases cited in 63 C. J. (1923), p. 389, Trade-marks, Trade-names and Unfair Competition, § 100, footnote 11.)

■ In the instant case the uncontradicted testimony of plaintiff disclosed that he was not in business during the period when he claimed that defendant was engaged in unfair competition.* Therefore, applying the foregoing rule to the present case, plaintiff failed to establish one of the essential elements of a cause of action for unfair competition.

There is no question presented in this case relative to defendant's using any of plaintiff's trade secrets for the reason that plaintiff's own testimony disclosed that he had no trade secrets.

*Standard Parts Co. v. Peck*, 264 U.S. 52 [44 S.Ct. 239, 68 L.Ed. 560]; *Magnetic Mfg. Co. v. Ding's Magnetic Separator Co.*, 16 F.2d 739; *Houghton v. United States*, 23 F.2d 386; *Dinwiddy v. St. Louis & O'Fallon Coal Co.*, 64 F.2d 303; *Famous-Players-Lasky Corp. v. Ewing*, 49 Cal.App. 676 [194 P. 65]; and *Wireless Specialty Apparatus Co. v. Mica Condenser Co.*, 239 Mass. 158 [131 N.E. 807, 16 A.L.R. 1170], relied on by plaintiff, are factually different from the present

---

*Plaintiff's testimony on this subject was as follows:

"Q. After you moved your place of business into your home, did you continue to sell to the same customers?

A. No.

Q. To whom you had previously sold?

A. No.

Q. Did you solicit them?

A. I called on them and told them that I had had some trouble with Mr. Bassett and I didn't know when I could make deliveries after that.

Q. Did you undertake to find someone else to manufacture your hoist?

A. Yes.

Q. Did you find someone?

A. No.

Q. Did you solicit any business from your previous customers?

A. No, I didn't solicit any business from them because I couldn't fill their orders and there was no need of it."

case. In each of the cases cited, the problem involved was the right of the employer to recover or secure ownership of certain patent rights which were acquired by an employee while employed in a master-servant relationship. Obviously, such a situation does not obtain in the present case and therefore such cases are here not applicable.

In *Goodyear Tire & Rubber Co.* v. *Miller,* 22 F.2d 353, specific performance of an agreement by defendant to assign to plaintiff patents secured while defendant was in plaintiff's employ was the basis of the litigation. Such a situation is entirely different from that now presented to this court.

*Holley* v. *Hunt,* 13 Cal.App.2d 335 [56 P.2d 1240], also relied on by plaintiff, merely held that the superior court had jurisdiction of a cause of action for unfair competition and that upon proof of unfair competition, injunctive relief is appropriate.

*Tobin Grocery Co.* v. *Spry,* 204 Cal. 247 [267 P. 694], pertains to an employee who misappropriated funds of his employer and was ordered to account for the money and its use. The reason for the citation of such case by plaintiff is not apparent. Neither is section 2237 of the Civil Code defining the duty of a trustee to account to a beneficiary for profits derived from the use or disposition of trust property relevant to the questions here presented for determination.

In view of our conclusion, it is unnecessary to discuss other propositions presented by counsel. The trial court erred in granting a judgment in favor of plaintiff.

The judgment is reversed.

Moore, P. J., concurred.

WILSON, J.—I concur. It should be made clear that by reason of the rapid development of the law of unfair competition and of the judicial declaration of rules that are made applicable to new situations when and as they arise, any rule announced should be specifically limited in its application to the particular subject then in question.

General statements such as the following always lead to confusion. In *Raladam Co.* v. *Federal Trade Com.,* 42 F.2d 430, 436, it is said that unfair competition cannot exist "unless there is competition, and there cannot be competition unless there is something to compete with." In *American Philatelic Society* v. *Clairbourne,* 3 Cal.2d 689, 697 [46 P.2d

135], the court said that "the essence of unfair competition lies in the simulation and imitation of the goods of a rival or competitor with the purpose of deceiving the unwary public into buying the imitation under the impression that it is purchasing the goods of such competitor."

Conceding the accuracy of these statements as applied to the facts in the respective cases above cited, numerous decisions are to be found in the books in which unfair competition in the use of a name has been enjoined when one party was not selling his product in competition with that of another. If confusion is likely to result whereby the public would be led to believe that the merchandise produced or sold by one is produced or sold by another or that the producer or merchant first in the field is in some manner connected with the newcomer, an injunction will issue even though the products of the parties are wholly dissimilar and for that reason the sale of the newcomer's article would not be in competition with or prevent the sale of the article produced or sold by the person first engaged in business.

Events have occurred and no doubt others will occur hereafter rendering necessary the restraining hand of the court to thwart efforts to pirate the good will of established businesses by acts of unfair competition, although the business or commodity of the junior dealer is not in direct competition with that of the established operator.

Decisions limiting the injunctive process of the court to the restraining of competition by unfair means of the producer of one product with another producer of a similar product have been outmoded in the development and extension of the law within recent years so that acts are now enjoined that were not prohibited by or that were expressly sanctioned by former decisions.

Injunctions are no longer limited to situations in which there is actual market competition. The desiccated doctrine of *L. E. Waterman Co.* v. *Modern Pen Co.*, 235 U.S. 88 [35 S.Ct. 91, 59 L.Ed. 142], and *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.*, 208 U.S. 554 [28 S.Ct. 350, 52 L.Ed. 616], wherein a name similar to one previously in use was permitted to be used in the same kind of business provided the public was informed that the second user was not connected with the first, has been superseded by decisions sustaining injunctions prohibiting a junior user from appropriating or imitating an established name in connection with an article not at

all similar to that manufactured or sold by the original user of the name and which is not competitive with the latter's product. (*Del Monte Special Food Co.* v. *California Packing Corp.,* (C.C.A. 9) 34 F.2d 774, 775; *Akron-Overland Tire Co.* v. *Willys-Overland Co.,* (C.C.A. 3) 273 F. 674; *Wall* v. *Rolls-Royce of America, Inc.,* (C.C.A. 3) 4 F.2d 333, 334; *Duro Co.* v. *Duro Co.,* (C.C.A. 3) 27 F.2d 339; *Yale Electric Corp.* v. *Robertson,* (C.C.A. 2) 26 F.2d 972, 974; *Peninsular Chemical Co.* v. *Levinson,* (C.C.A. 6) 247 F. 658, 661 [159 C.C.A. 560]; *Vogue Co.* v. *Thompson-Hudson Co.,* (C.C.A. 6) 300 F. 509, 512; cert. den. 273 U.S. 706 [47 S.Ct. 98, 71 L.Ed. 850]; *Lady Esther, Ltd.* v. *Lady Esther Corset Shoppe, Inc.,* 317 Ill. App. 451 [46 N.E.2d 165, 167, 148 A.L.R. 6, 9]; *Ward Baking Co.* v. *Potter-Wrightington,* (C.C.A. 1) 298 F. 398; *Pennsylvania Storage Battery Co.* v. *Mindlin,* 163 Misc. 52 [296 N.Y.S. 176, 178-9]; *Finchley, Inc.* v. *Finchley Co., Inc.,* (D.C.) 40 F.2d 736, 738; *American Products Co.* v. *American Products Co.,* (D.C.) 42 F.2d 488, 490; *Armour & Co.* v. *Master Tire & Rubber Co.,* (D.C.) 34 F.2d 201, 202. See, also, cases cited in note, 148 A.L.R. 22.)

It is manifest from this discussion, sustained by the authorities cited, that unfair competition may be and frequently is present even though the commodities produced or sold by the two litigants are totally dissimilar. In other words, there may be unfair competition even in the absence of "something to compete with" and "the essence of unfair competition" does not always lie "in the simulation and imitation of the goods of a rival or competitor."

A petition for a rehearing was denied July 8, 1948, and respondent's petition for a hearing by the Supreme Court was denied August 19, 1948.