[Civ. No. 22652. Second Dist., Div. One. Oct. 20, 1958.]

THOMAS EISTRAT, Appellant, v. WESTERN HARD-
WOOD LUMBER COMPANY (a Corporation), Re-
spondent.

Thomas Eistrat, in pro. per., for Appellant.

Wright, Wright, Goldwater & Wright, Loyd Wright and Edgar R. Carver, Jr., for Respondent.

LILLIE, J.—The action in the court below involved a claim of damages for conversion of lumber cut from timberlands owned by plaintiff. The matter was heard by the court sitting without a jury. It is from the judgment for defendant, plaintiff appeals.

Viewing the evidence in a light most favorable to respondent, the essential facts are these: Plaintiff and his wife owned timber-bearing lands in Tulare County. On August 2, 1948,

they entered into a timber sales agreement with Jones Lumber and Mill Company (hereinafter referred to as Jones Company) under which it was to enter plaintiff's land and cut and log timber. The contract provided in paragraph Two: "that no title or ownership of any timber shall pass from seller until after the timber is cut," and payment therefor shall be made each week for all timber cut the preceding week. Paragraph Four required compliance with all laws, rules and regulations pertaining to logging; and paragraph Eleven provided that should Jones Company fail to cut and pay for timber as required it shall have no right to continue cutting without prior written authorization from plaintiff.

On August 6, 1948, Jones Company moved a small mill onto the property and proceeded to cut timber which it sold to various purchasers, including defendant. On October 8, 1948, plaintiff visited the premises, observed a lack of adequate fire protection and orally advised Jones Company he was terminating the agreement. He also notified it in writing on October 11, 1948.

Up to October 8, 1948, defendant, a prior customer of Jones Company, made from it considerable purchases of timber cut and logged, receiving 11 loads. Thereafter, defendant took three loads of lumber from plaintiff's property—2 on October 19, 1948, and 1 on October 21, 1948. In all, defendant bought from Jones Company, and fully paid for, 86,958 board feet of lumber. On October 25, 1948, defendant made to Jones Company its last payment in full for all lumber purchased by it, concluding their dealings.

Prior to October 11, 1948, plaintiff had received various payments from Jones Company for timber cut; and from that date through the beginning of December, 1948, plaintiff continued to receive and cash checks from Jones Company on account of lumber cut and logged by it, the last, in the sum of $1,600 dated December 3, 1948. During the last of November or the first part of December, 1948, plaintiff, claiming he had not received all of the money due from Jones Company under the contract, told defendant's vice-president he intended to sue Jones Company for monies due him; and on December 9, 1948, plaintiff's wife sued Jones Company in Tulare County. In this suit plaintiff and his wife acknowledged receipt of the payments from Jones Company on account of timber cut and logged under the agreement of August 2, 1948, and sued to recover the balance due. In that action certain monies due Jones Company in the hands

of another of its customers, Brush Industrial Lumber Company, were attached.

Subsequently, on June 24, 1949, Jones filed a petition in bankruptcy in the federal court, Number 6688, in which proceeding plaintiff's wife filed a claim based on the contract of August 2, 1948.

In 1949, after the filing of the bankruptcy proceeding, plaintiff asked defendant's vice-president to aid him in establishing his claim against Jones Company under the contract by supplying him with an account of the amount of lumber received by defendant from Jones Company and paid for. Defendant did so. Jones was adjudicated a bankrupt and on September 29, 1949, plaintiff filed a petition to reclaim his timber property in the federal court, which petition was granted September 27, 1951. Its order was entered October 21, 1951.

Subsequent to the discharge of Jones as a bankrupt, plaintiff on August 15, 1951, made his first and only demand on defendant for the return of the lumber it had purchased from Jones Company and fully paid for, or its purchase price. This action for conversion resulted.

With respect to the lumber purchased by defendant from Jones Company, the trial court found that: "said Jones Lumber and Mill Company had title to said lumber and were the owners thereof and that the plaintiff and the said Elma Eistrat did not at any time subsequent to August 2, 1948, and do not now have, nor did either of them have at any time subsequent to August 2, 1948, nor now have, any right, title or interest in or to said lumber, or any part thereof."

Appellant has made a general attack on all of the court's findings, urging that "there is no substantial support in evidence to support any of the findings as to any facts found." His real contention seems to be that since Jones Company violated the fire laws, and hence the terms of the agreement, all lumber cut by it was wrongfully cut, title did not pass to it, and therefore could not pass to defendant.

Basically, the main issue before this court is whether the trial court's finding that Jones Company had title to the lumber sold to defendant is supported by substantial evidence.

If plaintiff failed to meet the burden of proving his ownership to the cut lumber and right to its possession, the judgment of the trial court must be affirmed. ■ It is well settled that "(I)n an action for conversion plaintiff must prove either (1) ownership with the right of possession, or (2) actual

possession of the article claimed to have been converted at the time of the alleged conversion. (Citations.)'' *Scutt* v. *Bassett*, 86 Cal.App.2d 373, at page 375 [194 P.2d 781]. ██ Applying the foregoing rule to the evidence in the instant case, it is clear plaintiff failed to establish a cause of action for conversion. The record shows that plaintiff had neither ownership of the lumber with a right to its possession, nor actual possession of it; and that Jones Company had good title to all lumber it cut and logged under the August 2, 1948, contract, and sold to defendant.

██ Nor is there evidence that the 3 loads of lumber taken by defendant from plaintiff's property after October 8, 1948, were cut after the termination of the contract, in fact, the evidence points the other way. Jones Company's mill was not in operation on October 8, 1948; on that day its logging contractor told Jones in plaintiff's presence that he would do no more cutting; and there is no evidence that any cutting took place after October 8, 1948. In its letter of October 14, 1948, to plaintiff protesting termination of the contract, Jones Company advised him that the felling of timber had run about 25,000 feet ahead of the logging operation. Obviously, the three loads of lumber taken by defendant after October 8, 1948, were cut before the termination of the contract, although not all removed by defendant until October 21, 1948. ██ As to whether Jones Company had title to the already cut timber it is clear both from the contract itself and the authorities that timber severed from the soil under the provisions of an agreement, license or permit, before the expiration or revocation thereof, becomes the personal property of the purchaser or licensee. He is vested with the rights incident to ownership of personal property and is entitled to remove it as his own. (*Sorensen* v. *Jacobson* (1951), 125 Mont. 148 [232 P.2d 332, 26 A.L.R.2d 1186]; 54 C.J.S., § 29(c), Logs and Logging, pp. 730-731.) ██ One who has felled lumber under a purchase agreement retains title to the lumber after the agreement has been revoked. (*Anderson* v. *Moothart,* 198 Ore. 354 [256 P.2d 257].)

██ Appellant argues that although he did not terminate the agreement until October 8, 1948, when he discovered the violation of fire laws, since the first week of August, 1948, Jones Company had violated them and its right to cut lumber terminated the first week in August. This argument completely ignores the authorities heretofore cited governing ownership of timber cut before revocation of an agreement.

It also overlooks the terms of the contract of August 2, 1948, as well as the evidence. Nothing in the contract precludes the application of general logging rules; in fact, the agreement specifically provides for passage of title after the lumber is cut, and payment each week for that cut the preceding week. The penalty for breach of any of the terms of the contract is not forfeiture of lumber cut, but a termination of the right to continue further cutting. Besides, any breach of contract by Jones Company prior to the termination of the contract by plaintiff could not in itself constitute the basis for a conversion. (*Emmert* v. *United Bank etc. Co.*, 14 Cal. App.2d 1 [57 P.2d 963].) Factually as well as legally, there is no merit to appellant's contention, because the evidence fails to point to any breach of the agreement of August 2, 1948, prior to October 8, 1948. In fact, plaintiff admitted that prior to October 8, 1948, he had no reason to believe Jones Company was not complying with the agreement, and had made prior visitation to the premises on September 4, 1948. Plaintiff was apparently satisfied with its operations under the contract until October 8, 1948, because he made no objection thereto, and received and cashed checks amounting to $1,573.45 from Jones Company under the contract until October 6, 1948. On October 8th, he voiced his first complaint, and then it concerned only inadequate fire protection and the method of cutting. Of interest at this point is Finding V of the Federal Court in the bankruptcy action, U.S.D.C. No. 6688, made September 27, 1951. The lower court in that connection found as follows: ". . . that said U.S.D.C. in its findings in support of said order entered October 1, 1951, among other things, declares that any default in the performance of the terms and conditions of said timber sales agreement (hereinabove referred to) were waived by Thomas Eistrat and Elma Eistrat by acceptance of payments for and on account of lumber cut and logged by the partnership and the bankrupt with knowledge of the delinquency of the partnership and the bankrupt in performance of said provisions, with the exception of those provisions relating to compliance with the forestry rules with respect to fire hazards."

Appellant objects to the trial court's finding herein on the ground that the federal court's finding upon which it was based was unnecessary to support the federal judgment, was surplusage and therefore cannot bind plaintiff. There is no doubt but that plaintiff, a party to the bankruptcy action, is bound by the federal court's finding that plaintiff waived

certain defaults of Jones Company by accepting payments from it, as well as by accepting payments upon plaintiff's claim in bankruptcy. (*Bernhard* v. *Bank of America,* 19 Cal. 2d 807 [122 P.2d 892] ; *Hardware Mut. Ins. Co.* v. *Valentine,* 119 Cal.App.2d 125 [259 P.2d 70] ; *Martin Music Co.* v. *Robb,* 115 Cal.App. 414 [1 P.2d 1000].) The payments referred to by the federal court are those received by plaintiff from Jones Company after plaintiff notified it of its breach and terminated the agreement. The last payment accepted by plaintiff consisted of $1,600 on December 3, 1948.

Appellant has cited for our attention the recent Supreme Court opinion in *Eistrat* v. *Cekada,* 50 Cal.2d 289 [324 P.2d 881], wherein he claims that the court found the federal findings held that he and not Jones had title to the lumber. A reading of this opinion discloses a discussion concerning only the interpretation of a restraining order issued by the bankruptcy court to prevent actions against the bankrupt. Other findings relating to the ownership of the timber were not discussed.

The trial court further found that plaintiff affirmed title in Jones Company to all lumber cut by it on plaintiff's property prior to December 9, 1948, by instituting a suit on that date in Tulare County in the name of his wife, in which they acknowledged receipt of certain payments on account of the timber cut and logged under the contract of August 2, 1948, and sought to recover a balance allegedly due for timber cut and logged under the agreement. Here again are presented questions of fact which the trial court decided adverse to plaintiff. The evidence is substantial to support the finding and the reviewing court will not disturb it. Furthermore, the Federal court heretofore made a similar finding in this connection which is binding on plaintiff.

 Substantial evidence in the record also sustains the trial court's finding that plaintiff waived rights, if any he had against defendant in conversion, and elected to pursue his remedy against Jones Company. It is clear that originally plaintiff deliberately chose to proceed against Jones Company. He so advised defendant in early 1948. Later, after he had proceeded against Jones Company and wanted to file his claim in the bankruptcy court against Jones, he even enlisted and received defendant's aid and assistance. It was not until he had exhausted his remedies against Jones Company and failed to satisfy his alleged claim that he decided to proceed against defendant, and then for the first time he made demand on it,

after two and a half years. Appellant urges that the evidence shows that on October 11, 1948, plaintiff gave defendant notice that Jones Company did not have title to the lumber; but the trial court, as it had a right to do, rejected this testimony when defendant's vice-president testified to the contrary. Plaintiff also contends that the monies he accepted were only to hold as set-off or security collateral for damages; and that the attachment of funds held by Brush Industrial Lumber Company in the Tulare County action was without his authorization. Again the trial court decided from the evidence the factual questions how, in what manner and for what purposes the monies were received by plaintiff.

Appellant argues that the trial court erred in refusing to permit his witness, Noral Sweem, to testify to a conversation between plaintiff and Jones outside of the presence of defendant. The record is not too clear what plaintiff wanted to prove since no formal offer of proof was made, but it discloses that Sweem hauled lumber to defendant from plaintiff's property in September and October of 1948. He testified that on October 8th, he was on the premises and heard an argument between Tom G. Jones and plaintiff. When plaintiff asked him the conversation, objection was made on the ground of hearsay. Asked by the court the purpose of the evidence, the plaintiff replied:

"Mr. Eistrat: I want to prove by this conversation my allegation. I have a joint venture allegation in my complaint, Third Amended Complaint, your Honor, and I believe all the participants in the joint venture are bound by the acts of the others in the venture, and I want to prove the facts.

"The Court: Is it your theory that the Western Hardwood Lumber Company was engaged in a joint venture within the meaning of the law defining joint ventures?

"Mr. Eistrat: Yes, your Honor.

"The Court: With Jones?

"Mr. Eistrat: Yes, your Honor."

The objection was sustained on the ground that a proper foundation had not been laid, since there was no evidence in the record supporting a joint venture and it was hearsay as to defendant.

The record is bare of any evidence of a joint venture between defendant and Jones Company and the ruling was proper. Plaintiff claims some did exist and relies primarily upon $3,000 defendant paid to Jones Company on August 18, 1948. But the record is clear that defendant had been a

prior customer of Jones Company; had a contract with it for purchase of cut lumber and the $3,000 was an advance payment on lumber to be later delivered; that 14 loads of lumber were subsequently delivered to defendant and that the difference between the $3,000 and the total amount was fully paid; and that all lumber delivered was paid for by defendant to Jones Company by October 25, 1948, on which date they concluded their business. Based upon this evidence, the trial court found that the $3,000 was a loan to be, and was, repaid by Jones Company by loads of lumber and that no joint venture or partnership existed between them.

Appellant contends that because of the court's refusal to allow in the testimony of Mr. Sweem, and for other reasons, he was denied due process of law. We have already ruled on the propriety of the court's action in connection with Sweem's testimony; and it is clear that at no point during the trial was appellant denied due process of law. On the contrary, the record is replete with assistance given to plaintiff by the court. Plaintiff appeared in propria persona, and although he has had prior court experience in various cases involving his own litigation and some law training, the trial court was patient, courteous and helpful to him. He was fully heard and he had every opportunity to offer numerous exhibits (40 in all), present his evidence and argue extensively. The record does not show that plaintiff was in any way precluded from putting on his case.

On the issue of estoppel, appellant claims that assuming he is estopped because of his conduct in suing in Tulare County and accepting the money from Jones Company, an estoppel against defendant exists in his favor, which should place the parties on an equal basis. In the first place, the court did not and could not find from the evidence facts to support an estoppel favoring plaintiff. The record does not show evidence to support any kind of a finding that the defendant knew of Jones Company's violation of the fire laws; that defendant knew Jones Company did not own the timber; that defendant paid unconscionably low distress prices for it, or that any estoppel in plaintiff's favor existed. On the contrary in connection with plaintiff's contention that defendant, at the time it took the lumber, knew Jones Company did not own it, the authorities are clear that plaintiff, by allowing Jones Company to come upon his property, set up a mill and cut timber, is now estopped to assert title against defendant. There is no question but that defendant was a

bona fide purchaser; that plaintiff in signing the agreement of August 2, 1948, knew Jones Company was going to take possession of the timberlands and sell lumber cut from the property, and that it was doing so and selling to defendant between August 2nd and October 8th. Assuming, under his theory, that plaintiff was the rightful owner of the lumber cut, under the law he would still be estopped from subsequently asserting title. ▮▮ In *Wendling Lbr. Co.* v. *Glenwood Lbr. Co.*, 54 Cal.App. 691, wherein plaintiff sold lumber to one Routt, a known dealer in lumber, and defendant without knowledge of the facts of the sale bought it from Routt, the court said at page 695 [202 P. 929] : "These facts bring this within the rule that where the owner of a property clothes another with the apparent title to and power of disposition of it and an innocent third party has thereby been induced to deal with the apparent owner in reference thereto, the true owner is estopped from afterwards asserting his title. (Citations.)"

▮▮ Further, in connection with estoppel, the evidence shows that plaintiff at no time advised defendant that Jones Company had no title to the lumber until after defendant's last transaction with it, when the lumber had been delivered and paid for in full.

For the foregoing reasons, the judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied November 13, 1958, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1958.